**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan BATISTA, Algimiro Abalo, Alberto Figueroa and Juan Corina-Villa,
Defendants-Appellants.**

No. 82–5023
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 7, 1984.

Thomas G. Murray, Miami, Fla., for Batista.

Paul Morris, Miami, Fla., for Abalo, Figueroa & Corina-Villa.

Stanley Marcus, U.S. Atty., Bruce A. Zimet, Richard Harris, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Appellants Juan Batista, Algimiro Abalo, Alberto Figueroa and Juan Corina-Villa were charged in a two-count indictment with conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 955a, and possession with intent to distribute 20,000 pounds of marijuana, 21 U.S.C. § 955a(a) and 18 U.S.C. § 2. The men were apprehended when the U.S. Coast Guard boarded their vessel, PILOT II, on March 16, 1981 and discovered its cargo of marijuana. All defendants were subsequently convicted in a non-jury trial. Two issues have been raised on appeal. All appellants contend that the district court erred in denying their motion to suppress evidence taken from the search of the PILOT II since the Coast Guard was without authority under 14 U.S.C. § 89(a) or 21 U.S.C. § 955a(a) to stop and search the vessel. Abalo, Figueroa and Corina-Villa also contend that there was insufficient evidence to support their convictions. Finding both claims to be without merit, we affirm the convictions.

Appellants contend that the Coast Guard was without authority to board and search the PILOT II because at the time the vessel was stopped there was no reason to believe that it was subject to the jurisdiction of the United States. At the time of the "stop and inquiry," the appellants claim the only thing that the officers knew about the vessel was that it was flying a Bahamian merchant flag, that it was fourteen miles from the Bahamas and that its running lights did not comply with Coast Guard regulations. Appellants' argument rests, therefore, on a claim that the PILOT II was a foreign vessel and therefore subject to jurisdiction only if the United States demonstrated a sufficient nexus with the vessel. *United States v. Marino-Garcia*, 679 F.2d 1373, 1380–82 (11th Cir.1982).

In reaching this conclusion, appellants conveniently ignore the findings of fact made by the district court. The court found that the PILOT II was a stateless vessel and thereby subject to U.S. jurisdiction. The trial court made this determination after taking evidence about the boarding of the boat and hearing a tape recording of a pre-boarding conversation held be-

tween the captain of the PILOT II and a Coast Guard officer. The evidence shows that while steaming in the area off the northwest coast of Cuba and south of the Bahamas, the Coast Guard vessel DAUNTLESS approached and intercepted two vessels sailing on parallel courses. The boats split and went in different directions and the DAUNTLESS followed the PILOT II. When they were at a distance of 50 to 150 feet from the PILOT II, a Coast Guard officer used a loudhailer to contact the vessel. Although the distance made the communication difficult, enough of the conversation came through for the district court to determine that the captain of the vessel was questioned in English about the nationality of the vessel and the crew and that he responded by saying that the boat was from Miami and that the crew members were U.S. citizens. The same Coast Guard officer had already noted that the vessel flew a Bahamian flag, but he believed it to be a courtesy flag since he had seen the boat leave Bahamian waters and the flag was not displayed in the way Bahamian vessels traditionally display their flags. The boat also had no markings to indicate a nationality. The Coast Guard officers made the decision to board the PILOT II because, as the district court found, it was apparently a U.S. vessel with Americans on board and because they had observed two lighting infractions on the vessel.

 The Coast Guard has the authority to board any vessel of the American flag. 14 U.S.C. § 89(a). This authority extends beyond the twelve-mile limit and need not be founded on any particularized suspicion. *United States v. Ricardo*, 619 F.2d 1124, 1129 (5th Cir.1980). In *United States v. Cortes*, this court determined that § 89(a) gives the Coast Guard authority to search and seize any vessel on the high seas that is subject to the jurisdiction, or to the operation of any law, of the United States. 588 F.2d 106, 108–09 (5th Cir.1979). In its findings of fact, the district court pointed to evidence that established the vessel was stateless or assimilated to a vessel without a nationality and therefore a "vessel subject to the jurisdiction of the

United States on the high seas." 21 U.S.C. §§ 955a(a), 955b(d). The ship was flying a Bahamian flag in a curious manner after leaving Bahamian waters, it was registered in yet another country, it was sailing under one name while having another (WANDA REHAMER) hidden beneath a plaque on the ship's bows, it had a fake U.S. registration certificate in the pilot house, and in answer to questions about the nationality of the vessel and crew the captain answered that both were from the U.S. The law in this circuit is that there need not be proof of a nexus between a stateless vessel and the country seeking to exercise its jurisdiction. Jurisdiction exists *solely* as a consequence of the vessel's status as stateless. *United States v. Marino-Garcia, supra*, 679 F.2d at 1383 (emphasis in original). A vessel which sails under the authority of two or more states, and uses them according to convenience, such as in this case flying one flag and claiming nationality under another, will be deemed a stateless vessel. 21 U.S.C. § 955b(d); Article 6 of the Convention on the High Seas; *Marino-Garcia*, 679 F.2d at 1382–84.

 The crewmen of the PILOT II, Abalo, Figueroa and Corina-Villa, also claim that the government did not prove that they knowingly exercised dominion and control over the contraband. *United States v. Willis*, 639 F.2d 1335 (5th Cir. 1981). In assessing this claim, we must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). Evidence introduced at trial and accepted by the district court proved that on approach to the vessel one member of the Coast Guard boarding party smelled marijuana and that the other officers smelled the odor once aboard. The 20,000 lbs. of marijuana on the 65-foot boat filled all of the main cargo compartments. The district court noted that the vessel was so loaded that the Coast Guard officers could not get to the main beam to check for an identification. The district court found that although marijuana was not in the living quarters or the galley in light of the vessel's size and the unsecured state of the hatches it would have been impossible for

the crew not to realize what the cargo was. Such a conclusion accurately reflects the case law in this circuit. *United States v. Ceballos,* 706 F.2d 1198, 1202 (11th Cir. 1983). The PILOT II was sighted 350 miles from the nearest point of land in the United States and according to the captain the vessel was headed for Miami. It was therefore on a voyage of some length. As for the conspiracy charge, under the law in this circuit participation of crew members may be inferred from a fairly lengthy voyage, a large quantity of marijuana and a close relationship between the captain and crew inferable from the length of the voyage and the size of the vessel. *United States v. Munoz,* 692 F.2d 116, 118–19 (11th Cir.1982). A reasonable trier of fact could have found that the evidence in this case established guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc). For the foregoing reasons, the convictions of the appellants are

AFFIRMED.