UNITED STATES of America,
Plaintiff-Appellee,

v.

Osvaldo LOALZA–VASQUEZ, Jairo Perez-Ricardo, Miguel Maldonado-Toro, Rodolfo Manjarres-Valest, Felipo Ibarra-Estrgryn, Raul Rivas, Herberto Keheda, Hernando Riascos-Torres, Roberto Ariza-Vargas, Juan Carrasquilla-Lombana, and Guillermo Saldana, Defendants-Appellants.

No. 83–3053.

United States Court of Appeals,
Fifth Circuit.

June 14, 1984.

154

John T. Mulvehill, Federal Public Defender, Virginia Laughlin Schlueter, Asst. Federal Public Defender, New Orleans, La., for Vargas.

Paul Morris, Miami, Fla., for other defendants-appellants.

John P. Volz, U.S. Atty., Harry W. McSherry, Jr., Marilyn G. Barnes, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before RANDALL, TATE, and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

Eleven defendants appeal from their conviction after jury trial on three drug-importation related charges. On appeal, they contend, inter alia, that United States jurisdiction of the charges was not shown where the vessel was seized in the Gulf of Mexico some 250 miles from the United States coast, and that their convictions should be reversed because the district court abused its discretion in refusing to grant their request for a severance and because their sixth amendment right to counsel was abridged by the unconsented-to conflicts of interest created by the representation scheme used at trial by their two trial counsel. Finding no reversible merit to any of the defendants' contentions, we affirm.

I.

In August, 1982 the Coast Guard cutter Valiant, Commanded by James White, was patrolling in the waters of the Gulf of Mexico. One evening while on that patrol approximately 250–300 miles off the coast of the United States, the Valiant spotted a 75–80 foot shrimping vessel whose name they later determined to be the Carabella Negra. At the time of the initial spotting, the shrimper was traveling in a northeasterly direction toward the United States.

When the Valiant neared the Carabella Negra, the shrimper made a radical turn and proceeded in a southerly direction, away from the United States. Although the shrimper was flying no flag initially, the guardsmen aboard the Valiant were soon able to determine that the shrimper was of Panamanian registry. The Valiant pursued the shrimper throughout the night. Meanwhile, permission to board the shrimper was obtained by the United States authorities from the Panamanian authorities and communicated the following afternoon to Commander White. The Coast Guard then boarded the shrimper.

Twelve crew members were found aboard the shrimper, none of whom spoke English. (Only eleven are defendants herein. The other crew member was a juvenile and the charges against him were prosecuted in juvenile court.) The shrimper's crew indicated to the Coast Guard that, inter alia, 1) the shrimper's captain had left the night before, 2) they did not know where the vessel's papers were located, and 3) the shrimper had departed from Columbia but they had no knowledge of their destination. Upon discovering from the crew that there was cargo aboard, the Coast guard searched the hold of the ship wherein they found numerous bales of marijuana totaling 35,937 pounds, worth between nine and sixteen million dollars. No other cargo was found on board. The vessel was not equipped for fishing.

All crew members were placed under arrest. On September 24, 1982, all crew members were charged in a four count indictment with I) conspiracy to possess with intent to distribute marijuana, II) conspiracy to import marijuana into the United States, III) possession with intent to distribute marijuana, and IV) possession with intent to distribute marijuana, and IV) possession with intent to distribute marijuana on board a vessel within the "customs waters" of the United States. The possession with intent to distribute count (III) was dismissed on the government's motion prior to trial. After a two day trial, a guilty verdict as to all counts (I, II, IV) was returned by the jury.

II.

On appeal, the defendants raise as contentions of error a) the district court's assertion of extraterritorial jurisdiction with regard to each count in the indictment, b) the insufficiency of the evidence to support the convictions, c) the district court's abuse of discretion in denial of the request for a severance, and d) the unconsented-to conflict of interest created by the representation scheme used at trial by the defendants' two trial counsel.

### A. Extraterritorial Effects

#### 1. Conspiracy Counts (I & II)

The United States has long exercised jurisdiction to attach criminal consequences to extraterritorial acts that are intended to have effect "within the sovereign territory," *see United States v. Cadena,* 585 F.2d 1252, 1257–58 (5th Cir.1978), "at least where overt acts within the United States can be proved." *United States v. Postal,* 589 F.2d 862, 885–87 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). In this circuit, furthermore, when the statute pursuant to which the United States is attempting to attach criminal consequences does not require proof of an overt act, "jurisdiction attaches [to extraterritorial acts] upon a mere showing of intended territorial effects." *United States v. Ricardo,* 619 F.2d 1124, 1129 (5th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980).

■ The defendants in this case were charged in Counts I and II of the indictment with controlled-substance conspiracies; in Count I of the indictment, the defendants were charged with conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841, 846, and in Count II of the indictment the defendants were charged with conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 960, 963. Proof of an overt act is not necessary in order to obtain a conviction under either of the above conspiracy statutes. *See United States v. Mann,* 615 F.2d 668, 671 (5th Cir.1980), *cert. denied,* 450 U.S. 944, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981); *United States v. Rodriguez,* 612 F.2d 906, 919 n. 37 (5th Cir.1980) (en banc), *aff'd,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Thus, in this case, the jurisdictional requisites with regard to the controlled-substance conspiracy counts may be satisfied merely by proof of intended territorial effects within the sovereign territory of the United States.

■ The United States offered as proof of the intended territorial effects in the United States of the charged conspiracies the testimony of Commander White that, based upon his initial sighting in the Gulf of Mexico of the then northeasterly bound shrimper, the shrimper would have landed in the United States. The defendants argue that from the point of the initial sighting of the shrimper in the Gulf of Mexico, the shrimper could have turned and proceeded to any number of other destinations other than the United States, and that such proof standing alone is therefore insufficient to support a conclusion that the defendants intended territorial effects in the United States. Thus, they argue that the evidence in the record was insufficient to support the district court's assertion of jurisdiction with regard to counts I and II, and, accordingly, that the convictions on those counts must be reversed.

We find, however, that the evidence was sufficient to support the assertion of jurisdiction. Here, for instance, the destination, for an illegal purpose, in the United States is somewhat corroborated by the immediate change of the United States-bound vessel to an opposite direction upon sighting of the Coast Guard cutter. Further, this court upheld in *United States v. DeWeese,* 632 F.2d 1267, 1271–72 (5th Cir.1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981), as sufficient to establish the requisite intended territorial effects of an extraterritorial act, an evidentiary showing similar to that set forth by the government herein, *i.e.,* the testimony of a Coast Guard Commander. Although the testimony in *DeWeese* was based upon evidence in addition to the sighting of a suspect vessel,[1] we find that the evidence in this case was likewise sufficient for a reasonable-minded juror to conclude that the intended destination was the United States, *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

---

**1.** The testimony of the Coast Guard Commander in *DeWeese* also was based upon inferences drawn from navigational charts discovered aboard the suspect vessel. No such charts were found aboard the shrimper in this case.

We therefore uphold the assertion of jurisdiction as to those counts.

### 2. *Possession Count (IV)*

█ The defendants were charged in Count IV of the indictment with possession of marijuana with intent to distribute, on board a vessel within the "customs waters" of the United States, in violation of 21 U.S.C. § 955a. As is not disputed, United States authorities may enforce the laws of the United States in the customs waters as to the ship of another nation only as permitted by treaty or other arrangement with the foreign government. *See* 19 U.S.C. § 1401(j); *United States v. Marino-Garcia,* 679 F.2d 1373, 1379–83 (11th Cir.1982), *cert. denied,* 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983).

The shrimper in this case was of Panamanian registry. Further, the shrimper was boarded by the Coast Guard on the high seas approximately 250–300 miles off the coast of the United States. Thus, the shrimper was subject to the laws of the United States only as permitted by a treaty or arrangement between the United States and the Panamanian government.

The United States sought to prove that such an arrangement existed between the United States and the Panamanian government with regard to the shrimper in this

case. Essentially the government's proof as to the arrangement consisted of Commander White's testimony as to how he was advised by a series of teletype messages that the government of Panama had authorized his crew to board the shrimper,[2] plus certified copies of two of the messages. The defendants contend that the above evidence was hearsay, subjected to a timely objection, and that the erroneous admission of that evidence, being the only evidence submitted in proof of the "arrangement," was an abuse of discretion. The United States in its brief concedes that the evidence introduced to prove an arrangement was hearsay. The district court, nonetheless, admitted the evidence, and the United States argues that under the residual exception to the hearsay rule, Fed.R.Evid. 803(24),[3] such a ruling was proper.

█ In applying the residual exception to the hearsay rule, district courts are given "considerable discretion," and a court of appeals will not disturb the district court's application of the exception "absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Page v. Barko Hydraulics,* 673 F.2d 134, 140 (5th Cir. 1982). The Panamanian official who gave

---

**2.** Upon sighting the shrimper, Commander White sent an informal communication to his superiors describing the sighting. It appears that Coast Guard headquarters then communicated the sighting to the Secretary of State, who then sought permission from Panamanian authorities for a boarding of the vessel. One of the messages introduced into evidence at trial was from the Secretary of State to the Coast Guard headquarters advising that authorization for a boarding, and seizure, if contraband was found, had been obtained from a specified Panamanian official, who had also verified the Panamanian registry of the vessel. The other message was from an official at the American Embassy in Panama that, inter alia, confirmed the Panamanian registry of the vessel and that permission to board the vessel had been secured from a Panamanian government agency, who under Panamanian law had authority to grant such permission. No witness with first-hand knowledge as to the purported authorization was introduced at trial.

**3.** Fed.R.Evid. 803(24) provides in pertinent part:

> **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

the requisite permission was not subject to the subpoena power of the United States and thus there was no non-hearsay alternative that was probative on the issue. The teletype messages introduced into evidence reflected the attainment and transmittal through diplomatic channels of the foreign government's authorization. The teletype messages of United States governmental agencies, the trial court felt, were of the requisite trustworthiness. No issue is raised as to the verity of their substantive contents. Although the defendants were furnished, by pretrial discovery, notice of the government's intended use of the hearsay evidence in question, which notice included a pretrial ruling by the district court that the teletypes were admissible, the defendants did not seek to raise any question with regard to those contents, nor did they attempt to produce evidence to the contrary of the contents of these teletypes. *See Piva v. Xerox Corporation,* 654 F.2d 591, 596 (9th Cir.1981).

■ The defendants principally rely upon *United States v. Mathis,* 559 F.2d 294, 298–300 (5th Cir.1977), for the proposition that in criminal cases the residual exception to the hearsay rule must yield in light of the presumption favoring live testimony engendered by a defendant's sixth amendment right to confrontation. The court in *Mathis,* however, merely suggested that the preference for live testimony should be an added consideration in the balancing required in applying the residual exception. *Id.* at 299. Nonetheless, even considering the preference for live testimony in criminal cases, we find no clear error in the admission of the evidence because the defendants do not attack the essential authenticity of the hearsay evidence, and we are unable to see how live testimony of State Department officials could have been more probative on the issue or have been more susceptible to attack by the defendants.

We do not feel that the district court made clear error in this case in weighing the relevant factors and concluding that the evidence was admissible on the ultimate issue of jurisdiction, because of its reliability and probativeness, and because their admission did not create undue or unfair prejudice to the defendants.

### B. *Sufficiency of the Evidence*

■ Viewing the evidence and the inferences that may be drawn therefrom in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), on review we must judge that evidence as sufficient to support a conviction if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The defendants contend that the evidence in this case at best established only their presence aboard a vessel found to contain marijuana and that mere presence is insufficient to support their convictions. *See United States v. Rojas,* 537 F.2d 216, 219–20 (5th Cir.), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1976).

■ The charges against the defendants require as an element of proof, inter alia, proof of the defendants' knowledge of the marijuana cargo and its destination. We are unable to agree with the defendants contention that the evidence at trial proved only their presence aboard a vessel found to contain marijuana. This court has stated that

> ... the probable length of the voyage, the large quantity of marijuana on board, and the necessarily close relationship between the captain and crew were factors from which the jury could reasonably find guilt beyond a reasonable doubt.

*United States v. DeWeese,* 632 F.2d 1267, 1272, *cert. denied,* 451 U.S. 902, 101 S.Ct. 1967 (1981). *See also United States v. Freeman,* 660 F.2d 1030 (5th Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982). We find that evidence of a voyage by sea in a small vessel for at least 6 or 7 days duration with approximately 36,000 pounds of marijuana aboard

is sufficient for a reasonable trier of fact to find that more than mere presence had been sufficiently established in this case. Further, that evidence, in addition to the other evidence at trial, was sufficient for a reasonable trier of fact to conclude that the defendants were guilty of the offenses charged in that they knew of the marijuana on board and also knew of its destination as the United States.

### C. *Denial of the Requested Severance*

■ Under Rule 14 of the Federal Rules of Criminal Procedure, a court is authorized to grant a severance if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants. Fed.R.Crim.P. 14. The severance decision on such a motion rests with the sound discretion of the trial court. *United States v. Solomon*, 609 F.2d 1172, 1175 (5th Cir. 1980). "In order to demonstrate an abuse of discretion by the trial court, the defendant has the very heavy burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice which the trial court could not prevent." *United States v. Wilson*, 657 F.2d 755, 765 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982).

■ The remaining defendants moved to sever their trial from that of their codefendants Ibarra-Estrgryn and Carrasquilla-Lombano against whom the government had expressed an intention to and in fact did use prior similar offense evidence at trial. The failure to grant the severance on the basis of the intended use of that evidence, in light of the difficulty experienced by the trial court in distinguishing between the Spanish speaking defendants (all of whom had Spanish surnames and similar appearances), they argue rendered compelling in this case the prejudice of guilt by association that normally exists when codefendants are tried together. They argue that the prejudice resulting from the failure to grant the severance made it impossible for them to receive a fair trial. The defendants argue that, therefore, the district court abused its discretion by denying the requested severance.

We find no abuse of discretion in the district court's denial of the motion to sever. At trial, the moving (non-prior act) defendants were ostensibly represented by a different trial counsel (see below) than the defendants against whom the government intended to use prior similar act evidence. Further, the district court took great pains to aid the jury in distinguishing the defendants. Moreover, the district court gave limiting instructions prior to the introduction of the similar offense evidence and in the charge to the jury. For the reasons stated, we feel that the compelling prejudice that might have resulted in this situation was averted by the district court and that, accordingly, the district court did not abuse its discretion in denying the requested severance.

### D. *Conflict of Interest*

■ In *United States v. Garcia*, 517 F.2d 272, 275–77 (5th Cir.1975), this court held that a defendant may waive his constitutional right to conflict-free representation by an attorney. In this case, two *Garcia* hearings were held wherein the defendants allegedly waived their right to conflict-free representation by consenting to the representation by attorneys Mehrige and Clay of all eleven defendants. At trial, however, Mehrige ostensibly represented only two of the nine defendants, with Clay ostensibly representing the other nine. That representation scheme, the defendants contend, was not consented to, and therefore, the resulting impingement on their constitutional rights entitles them to reversal of their convictions because of the conflicting loyalties and unconsented-to change by which one counsel abandoned one set of defendants and the other the remaining defendants.

We find no unconsented-to conflict of interest created by the representation scheme used at trial by the defendants' trial attorneys. That scheme was used at trial, with the permission of the district

court, merely a matter of trial strategy purportedly in the best interests of the defendants;[4] the joint representation of the defendants in fact continued through the trial. Thus, no conflict of interest existed separate from that consented to by the defendants.

*Conclusion*

Finding no merit to any of the contentions of error raised by the defendants, we AFFIRM.

AFFIRMED.

---

4. The district court permitted modification and supplementation of the record to reflect the contents of an untranscribed bench conference, which trial counsel for the defendants, the prosecutor, and the district court agreed had occurred. At this bench conference, the joint defense counsel (Mehrige and Clay) for all eleven defendants had obtained the district court's permission that, "as a matter of trial strategy in front of the jury," Mehrige would be shown as representing the two prior-offense defendants and Clay would represent the remaining nine (presumably more likely to be innocent) defendants, but that both would still represent all defendants. At the bench conference, the court granted the attorneys permission to proceed in this manner "in the interest of allowing counsel to utilize whatever trial strategy they thought beneficial" to their clients. We overruled the defendants' objections in this court to this modification and supplementation of the record. *See United States v. Ariza-Vargas,* No. 83–3053, filed May 22, 1984 (5th Cir.) (unpublished order).