UNITED STATES of America,
Plaintiff-Appellee,

v.

Pleno MATUTE, Hernan Estrada, Carlos Martinez, Juan Guerreoro, Jose Saavedra, Eric Prentt and Thomas Herrera, Defendants-Appellants.

No. 84–5701
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Aug. 12, 1985.

Jose J. Larraz, Jr., Larraz & Larraz, PA, Miami, Fla., for Matute/Estrada.

Elias B. Rudnikas, Miami, Fla., for Martinez/Guerreoro.

Theodore J. Sakowitz, Federal Public Defender, Glenn Feldman, Asst. Federal Public Defender, Miami, Fla., for Saavedra & Herrera.

Henry Volpe, Miami, Fla., for Prentt.

Stanley Marcus, U.S. Atty., Andrea M. Simonton, Linda Collins-Hertz, Sonia Escobio O'Donnell, Asst. U.S. Attys., for plaintiff-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Matute, Estrada, Martinez, Guerreoro, Saavedra, Prentt and Herrera were found in international waters by the United States Coast Guard on a boat containing 60,000 pounds of marijuana. Appellants were indicted for conspiracy to possess and possession with intent to distribute marijuana under 21 U.S.C.A. §§ 955a(a), 955c and 18 U.S.C.A. § 2. Prior to entering their pleas, all appellants joined in a motion to dismiss the indictments, asserting that the boat was not subject to the jurisdiction of the United States within the meaning of 21 U.S.C.A. § 955b(d) because the boat was validly registered in Venezuela. The district court held an evidentiary hearing on appellants' motion and thereafter denied the motion, holding that the appellants' boat was "stateless" and, thus, subject to United States jurisdiction under § 955b(d).

Record, vol. 2 at 73–77. Then, pursuant to a plea agreement, appellants pleaded guilty to the conspiracy count and the government agreed to dismiss the substantive count, subject to appellants' rights to appeal the district court's denial of their motion to dismiss. *Id.* at 78–79. This appeal ensued.

## FACTS

At the evidentiary hearing on appellants' motion to dismiss, Coast Guard Seaman Eddie Rolon testified on behalf of the government and appellant Jose Saavedra testified on behalf of the appellants. The facts which follow are taken from the district court's findings of fact which are not challenged on appeal.[1]

On May 19, 1984, the Coast Guard cutter DILIGENCE approached the BISMARK, the ship occupied by appellants. A conversation occurred over the ships' radios between Rolon and an individual who identified himself as the acting captain of the BISMARK. The acting captain's responses to specific questions from Rolon indicated that all the members of the crew were Colombian and that the ship was of Colombian registry. After receiving these answers, Rolon asked the acting captain to display a flag or some evidence of the nationality of the vessel. At this point, the acting captain directed that a Colombian flag be displayed from the bridge of the vessel, and a flag was displayed. The district court received the flag in evidence and determined that it was in fact a Colombian flag. *Id.* at 74–75. After the Coast Guard boarded the BISMARK, a "hybrid" flag was found in the crew's quarters. The flag incorporated characteristics of both the Venezuelan flag and the Colombian flag. The district court also found that the BISMARK did not have a registry vessel number, a home port, or its name painted on its hull. Rather, "[t]here was a nameplate that was portable and/or removable

that was hung over the side or some prominent portion of the vessel." *Id.* at 74.

## DISCUSSION

Appellants argue, as they did in the district court, that the BISMARK was not subject to United States jurisdiction and, therefore, their convictions are invalid. It is illegal for persons "on board a vessel subject to the jurisdiction of the United States on the high seas" to possess or to conspire to possess with intent to distribute marijuana. *See* 21 U.S.C.A. §§ 955a(a), 955c. "Vessel subject to the jurisdiction of the United States" is defined by statute as follows:

"Vessel subject to the jurisdiction of the United States" includes a vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958.

21 U.S.C.A. § 955b(d). The above-quoted statutory language permits the exercise of jurisdiction over vessels which are "stateless." The question in this case, then, is whether the BISMARK was "stateless" within the meaning of the statute and relevant case law.

There is no question that the BISMARK was not "a vessel without nationality" because it is undisputed that the BISMARK was validly registered in Venezuela. *See* Record, vol. 2 at 6. We must determine, however, whether the BISMARK was "a vessel assimilated to a vessel without nationality" within the meaning of the relevant portions of the Convention on the High Seas. Article 6, paragraph 2 of the Convention on the High Seas of 1958 reads as follows:

A ship which sails under the flags of two or more States, using them according to convenience, may not claim any of the nationalities in question with respect

---

**1.** The district court's findings of fact indicate that the court basically adopted Rolon's testimony. To the extent that Saavedra's testimony was inconsistent with Rolon's testimony, the district court explicitly credited Rolon. *See* Record,

vol. 2 at 75. This credibility finding was, of course, fully within the province of the district court and such finding is not challenged on appeal.

to any other State, and may be assimilated to a ship without nationality.

*Reprinted in* 13 U.S.T. at 2315. In *United States v. Batista*, 731 F.2d 765 (11th Cir. 1984), this court interpreted the above-quoted language as follows:

A vessel which sails under the authority of two or more states, and uses them according to convenience, such as in this case flying one flag and claiming nationality under another, will be deemed a stateless vessel.

*Id.* at 767; *see also United States v. Marino-Garcia*, 679 F.2d 1373 (11th Cir.1982), *cert. denied sub nom., Pauth-Arzuza v. United States*, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983). A brief examination of the facts as found by the district court lead us inescapably to the conclusion that the BISMARK was sailing under the authority of two nations. The BISMARK's acting captain stated that the crewmembers were Colombians and the crew presented a valid Colombian flag. However, when asked to present the vessel's registration, the crew produced Venezuelan registration papers. The BISMARK's lack of permanent indicia of name and home port on its hull is also a clear indication that the crew wanted to be able to manipulate the vessel's "nationality" on short notice.

Appellants argue that the Convention on the High Seas and relevant binding case law does not establish United States jurisdiction over a vessel if, as in this case, the vessel is validly registered in a foreign country. Appellants claim that a ship may only be considered "assimilated to a ship without nationality" if it sails under the authority of two or more States, using them according to convenience, *and* it is not validly registered in any foreign nation. We need only look to the case of *United States v. Marino-Garcia* in order to reject this argument. In *Marino-Garcia*, the crewmembers of the FOUR ROSES were indicted under the same drug laws at issue in this case. The court stated:

We note that the evidence was more than sufficient to support the determination that the FOUR ROSES was a stateless vessel. A vessel will be deemed stateless where it sails under the authority of two or more States and uses them according to convenience.... The FOUR ROSES appears to have been registered in Honduras under the name JENNY CONNOR. When approached by the Coast Guard cutter DEPENDABLE, however, the vessel displayed no indicia of Honduran authority. In fact, the name of the vessel had been altered and the words "Miami, Florida" stenciled on the bow to indicate the home port. Additionally, crewmen told Coast Guard personnel that the vessel's nationality was "Miami, Florida." Thus the vessel was registered under one nationality but asserting a false nationality when encountered by the Coast Guard cutter DEPENDABLE. Under Section 955a, the vessel was clearly characterizable as stateless.

*Marino-Garcia*, 679 F.2d at 1378 n. 3. In both *Marino-Garcia* and in the instant case, the marijuana-laden ships were validly registered in a foreign country, while the crewmembers displayed various indicia of nationality in another country. Although in *Marino-Garcia* the "second country" was the United States, this factor cannot and should not logically make any difference. The most reasonable inference from the facts of this case is that the crewmembers of the BISMARK were hoping, if worse came to worst, that they could evade the jurisdictions of the United States, Venezuela and Colombia through the clever use of registration papers and various other indicia of nationality. This is precisely what 21 U.S.C.A. § 955b(d) and Article 6, paragraph 2 of the Convention of the High Seas were designed to prevent. *See generally Marino-Garcia*, 679 F.2d at 1379–83.

Accordingly, the district court's denial of appellants' motion to dismiss is

AFFIRMED.