**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose GONZALEZ, Jose D. Ramirez, Juan Payan, Bismark Wilson Arragon, Raul A. Medina, Jaime Brekeman, Juan Pacheco, Defendants-Appellants.**

**No. 86–7155**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 1987.

John Furman, Mobile, Ala., for Jose Gonzalez.

Arthur J. Madden, III, Mobile, Ala., for Jose D. Ramirez.

# 1540

Rose A. McPhillips, Mobile, Ala., for Juan Payan.

Desmond B. Toler, Mobile, Ala., (Court-appointed), for Bismark W. Arragon.

John M. Tyson, Jr., Mobile, Ala., (Court-appointed), for Raul Medina.

C. Christopher Clanton, Mobile, Ala., (Court-appointed), for Jaime Brekeman.

Richard L. Watters, Mobile, Ala., (Court-appointed), for Juan Pacheco.

J.B. Sessions, U.S. Atty., Gloria A. Bedwell, Asst. U.S. Atty., Mobile Ala., for U.S.

Appeal from the United States District Court for the Southern District of Alabama.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

This marijuana-smuggling case arises from the seizure of a vessel containing over 13,000 pounds of marijuana. The eight defendants-appellants were convicted by a jury of violating 21 U.S.C.A. sec. 963 (conspiracy to import marijuana into the United States in violation of 21 U.S.C.A. sec. 952(a)), 21 U.S.C.A. sec. 955a(a) (possession of marijuana aboard a stateless vessel with intent to distribute), 21 U.S.C.A. sec. 955a(d) (possession of marijuana aboard a stateless vessel with intent to import said marijuana into the United States), and 21 U.S.C.A. 955c (conspiracy to possess marijuana aboard a stateless vessel with intent to distribute in violation of 21 U.S.C.A. sec. 955a(a)). We affirm.

## I. FACTS

Appellants were arrested on board the GRAMA J,[1] a 75 foot fishing vessel that contained over 13,000 pounds of marijuana when seized.[2] The Coast Guard first sighted the GRAMA J on September 27, 1985, although it lost track of the vessel after only a few hours surveillance. Subsequently, on September 30, 1985, the Coast Guard spotted and boarded a smaller fishing vessel, the CLOUDS. After a search of the CLOUDS revealed a large amount of marijuana,[3] its three-man crew was arrested.

Two days later the GRAMA J again was sighted by a Coast Guard surveillance plane; the same cutter that seized the CLOUDS was dispatched to intercept the GRAMA J. On October 2, 1985, that Coast Guard cutter made radio contact with the GRAMA J and was informed by appellant Jose Ramirez that the vessel's master had left the vessel the night before. Ramirez also told the Coast Guard that the boat was the GRAMA J and was of Honduran registry. The boat's name plate stated that it was the GRAMA J; the vessel flew no flag. After receiving permission from Ramirez to board and search, the Coast Guard boarding party searched the boat and eventually discovered a large quantity of marijuana in a locked hold.[4] They also found an envelope that contained Colombian registration papers for a vessel named the ALVAREZ REAL; the envelope had the name "Jairo" written on it.

## II. DISCUSSION

### A. Admissibility of Evidence

Appellants first contend that the trial court erroneously allowed the government to introduce evidence about the activities and seizure of the CLOUDS—evidence that appellants maintain is irrelevant or unduly prejudicial or both. See Fed.R. Evid. 401, 402, 403. The government prof-

---

1. The parties disagree whether the seized vessel actually was the GRAMA J or a Colombian vessel named the ALVAREZ REAL. See discussion at Section II B, *infra*. For ease of citation, we shall refer to the vessel as the GRAMA J.

2. The marijuana had an alleged retail or "street" value of approximately 9 million dollars.

3. The CLOUDS carried 143 bales of marijuana weighing 9,000 pounds. This marijuana allegedly had a retail value of approximately 6 million dollars.

4. Ramirez, who had no key to the lock, gave permission to open the locked hold, which contained 332 bales of marijuana weighing 13,456 pounds.

fered the evidence to demonstrate that the GRAMA J was a so-called "mother ship" that had offloaded marijuana onto the CLOUDS.[5]

In brief summary, evidence was adduced that linked the two ships in the following ways: the marijuana bales on board the CLOUDS would have filled that part of the GRAMA J's hold not containing marijuana; the two boats were close enough to one another that an earlier rendezvous was physically possible; one of the crewmen on the CLOUDS was a Colombian named Jairo Gomez who claimed he lived in Florida but could not give an address in that state; the envelope containing registration papers for the ALVAREZ REAL, which was found on board the GRAMA J, had the name "Jairo" on it; the GRAMA J had red "rub marks" on its hull and the CLOUDS had a red "rub rail;"[6] and the red rub marks on the GRAMA J were approximately where they would naturally occur had the two vessels actually tied together at sea.

Whether evidence is relevant is a determination that lies within the sound discretion of the trial court. *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1305 (11th Cir.1985). Similarly, whether evidence is admissible under Fed.R.Evid. 403 is subject to reversal only for an abuse of discretion. *Id.* The trial court did not abuse its discretion in holding this evidence relevant and admissible.[7]

### B.  Jurisdiction

Appellants next maintain that the trial court improperly concluded that it had jurisdiction over two of the four counts, i.e., those counts involving the possessing and conspiring to possess marijuana that predicate jurisdiction on the stateless nature of the vessel. *See* 21 U.S.C.A. secs. 955a(a),

955c. Put simply, appellants argue that the government's evidence was insufficient to prove that the GRAMA J was a "stateless vessel." In evaluating this claim we must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

During its search of the GRAMA J, the Coast Guard boarding party discovered Colombian registration papers for a vessel named the ALVAREZ REAL; and a post-seizure search uncovered a white painted board on which was painted "ALVAREZ _____AL." Moreover, a Colombian police officer familiar with the ALVAREZ REAL testified at trial that a Coast Guard photograph of the seized vessel was a picture of the ALVAREZ REAL. The same Colombian police officer also produced a photograph of the ALVAREZ REAL that he had taken earlier, in Colombia, pursuant to an ongoing investigation of drug smuggling activities in Colombia. The officer testified that the two photographs were of the same boat. The government, however, did not produce any official verification from the Colombian government that the ALVAREZ REAL was of Colombian registry.

A vessel that "sails under the authority of two or more states, and uses them according to convenience ... will be deemed a stateless vessel." *United States v. Batista*, 731 F.2d 765, 767 (11th Cir. 1984). Similarly, a vessel that falsely claims a nationality is deemed to be a stateless vessel. *See United States v. Alvarez-Mena*, 765 F.2d 1259, 1264 n. 8 (5th Cir. 1985).

Appellants' arguments are unavailing. This court has held that "a lack of permanent indicia of name and home port

---

5.  In such an operation, the larger mother ship and the smaller vessel rendezvous at sea, tie together and transfer a portion of the mother ship's cargo to the smaller vessel, which then actually delivers the contraband.

6.  A "rub rail" is a railing on a vessel's hull that keeps the boat's hull from being damaged whenever the ship ties up to another object, such as a pier or another boat. The "rub marks" in ques-

tion presumably are the marks created when the two vessels allegedly were tied together at sea to offload marijuana from the GRAMA J.

7.  To the extent that the evidence linking the two vessels is weak, its relative weakness could be brought out on cross-examination. *Dallis*, 768 F.2d at 1305.

on [a vessel's] hull is also a clear indication that the crew wanted to be able to manipulate the vessel's 'nationality' on short notice", thereby rendering the vessel "stateless." *United States v. Matute,* 767 F.2d 1511, 1512–13 (11th Cir.1985). The signboards bearing the official documentation number of the GRAMA J were portable, removable and clearly capable of quick manipulation.[8] The defaced ALVAREZ REAL name plate that eventually was uncovered also points to an unacceptably flexible view of nationality. Furthermore, as in *Matute,* the acting captain of the seized ship stated that the vessel was of one nation's registry, yet the only registration papers found aboard were of a different nation. *See id.* at 1513.

The evidence adduced was sufficient to establish that the GRAMA J was a stateless vessel.

## C. Sufficiency of the Evidence

### 1. Territorial nexus

■ Appellants next contend that the government adduced insufficient evidence to establish that appellants intended to import the marijuana into the United States.[9] In cases involving such a nexus, the government must prove that the appellant "intended territorial effects within the sovereign territory of the United States." *United States v. Loalza-Vasquez,* 735 F.2d 153, 156 (5th Cir.1984) (involving conspiracies under 21 U.S.C.A. secs. 846, 963). In evaluating this claim, we must view the evidence available to the jury in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and determine whether a reasonable jury could have determined beyond a reasonable doubt that the GRAMA J's intended destination was the United States or that the appellants' purpose was to send marijuana into this country. *See United States v. Gray,* 659 F.2d 1296, 1302 (5th Cir.1981) (Unit B).[10]

The evidence submitted by the government was sufficient to convince a reasonable jury that: the GRAMA J was on a course headed to the United States when sighted; the ship changed course once its crew realized the vessel was sighted; and the vessel had acted at least once as a mother ship. Courts have relied on these factors as indicating a sufficient territorial nexus to the United States;[11] they are sufficient to establish the necessary link in this case.

### 2. Conspiracy counts

■ Appellants also challenge whether the evidence was sufficient to prove that they were participants in the various charged conspiracies. To convict a defendant for conspiracy, the government must establish that an agreement existed, that the defendant knew of the general purpose of the agreement, and that the defendant voluntarily participated in the agreement. *United States v. Meester,* 762 F.2d 867, 881 (11th Cir.1985). Participation in a conspiracy can be proved by direct or circumstantial evidence, *United States v. Cole,* 755 F.2d 748, 755 (11th Cir.1985), and may be

---

**8.** It was established at trial that the GRAMA J's nameplate was bolted to the transom of the ship. The official, Honduran documentation numbers were mounted on identification boards; each board had nail holes in its top and was held in place by wire wrapped around the stanchion and the rail that ran across the stanchion. The boards, which were displayed on either side of the pilot house above the doors to the pilot house, could not be considered permanent indicia under any standard.

**9.** Two of the four counts on which appellants were convicted required this territorial nexus. *See* 21 U.S.C.A. secs. 955a(d), 963.

**10.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

**11.** *See United States v. Quemener,* 789 F.2d 145, 156 (2d Cir.1986); *Loalza-Vasquez, supra,* 735 F.2d at 156; *United States v. Henriquez,* 731 F.2d 131, 134 (2d Cir.1984); *United States v. Gray,* 659 F.2d 1296, 1298 (5th Cir.1981) (Unit B); *United States v. DeWeese,* 632 F.2d 1267, 1271 (5th Cir.1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); *United States v. Ricardo,* 619 F.2d 1124, 1128 (5th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980).

inferred when crewmen are aboard a vessel on which the presence of contraband is obvious. *United States v. Cruz-Valdez,* 773 F.2d 1541, 1546 (11th Cir.1985), *cert. denied sub nom. Ariza-Fuentas,* —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

■ Voluntary, knowledgeable participation by a crewman in such a situation may be shown in a number of ways; the test is one of reason. *Id.* The predominant factor present in our cases, however, is the quantity of marijuana on board. *Id.* Courts and juries also may take notice of the fact that drug smugglers are unlikely to employ outsiders to work a vessel carrying millions of dollars worth of marijuana, *id.;* "it is reasonable for a jury to conclude that in the course of transporting millions of dollars of readily marketable marijuana through channels that should lack the protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders." *Id.* at 1547. We also note that once the government has established that a defendant was a crew member on a ship that was heavily laden with marijuana, "the government's burden to prove participation is relatively light." *Id.*

■ The government adduced facts indicating that the marijuana odor was noticeable from the aft deck even when the cargo hatch was closed, that appellant Ramirez became nervous and insecure when questioned about the locked cargo hatch, and that the marijuana was in the cargo hold, which has been held to be a common area of the vessel. *See United States v. Lopez,* 761 F.2d 632, 635 (11th Cir.1985) (no fourth amendment privacy interest in common areas, such as cargo hold, of vessel). Evidence also existed that marijuana had been offloaded from the GRAMA J to the CLOUDS—an activity that the jury reasonably could conclude would be at least noticed, if not participated in, by the crew. Furthermore, the vessel was stateless and the size of the ship and the length of the voyage demonstrate that the crew, by necessity, had a close relationship with each other and the master. *See United States*

*v. DeWeese,* 632 F.2d 1267, 1272 (5th Cir. 1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); *United States v. Alfrey,* 620 F.2d 551, 556 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980).

All of these facts, and all of the inferences that can be drawn therefrom, are sufficient to support a conviction for conspiracy to possess with intent to distribute and conspiracy to import. *See United States v. Michelena-Orovio,* 719 F.2d 738, 743, 752 (5th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

3. Substantive counts

■ Possession of contraband may be actual or constructive; constructive possession, which "consists of the knowing exercise of or the knowing power or right to exercise dominion and control over the substance," may be shared by others. *United States v. Knight,* 705 F.2d 432, 433 (11th Cir.1983). Constructive possession may be proved by demonstrating that a defendant worked on a small vessel that is heavily laden with marijuana and that the presence of the marijuana is obvious. *Id.* at 433–34. Similarly, the government's evidence discussed above established more than mere presence aboard the GRAMA J and was sufficient to support the importation conviction. *See Michelena-Orovio,* 719 F.2d at 743.

The evidence here was sufficient to support the substantive convictions.

D. Double Jeopardy

Appellants were convicted under two separate conspiracy provisions: 21 U.S. C.A. secs. 963 and 955c. They challenge these convictions on the grounds that their fifth amendment right against double jeopardy is violated by multiple punishments under section 955c and section 963 for what they claim is a single conspiracy arising from a single transaction. Although multiple punishment for the same offense violates the double jeopardy clause, *North Carolina v. Pearce,* 395 U.S. 711, 717, 89

S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), we believe appellants' arguments are precluded by the reasoning expressed in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *See United States v. Boldin*, 772 F.2d 719 (11th Cir. 1985), *cert. denied sub nom. Crump v. United States*, —— U.S. ——, 106 S.Ct. 1269, 89 L.Ed.2d 577 *cert. denied sub nom. Scarborough v. United States*, —— U.S. ——, 106 S.Ct. 1498, 89 L.Ed.2d 899 *cert. denied sub nom. Luck v. United States*, —— U.S. ——, 106 S.Ct. 1520, 89 L.Ed.2d 917 (1986); *United States v. Luis-Gonzalez*, 719 F.2d 1539 (11th Cir.1983) (en banc).

Section 963 of Title 21 provides that "any person who attempts or conspires to commit any offense defined in this subchapter is punishable [to an extent not to] exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy."[12] The underlying offense at issue in the section 963 conspiracy is found at 21 U.S.C.A. sec. 952(a): "It shall be unlawful ... to import [marijuana] into the United States from anyplace outside thereof...."

The second conspiracy conviction was pursuant to section 955c, which provides that anyone who "conspires to commit any offense defined in sections 955a to 955d of this title is punishable [to an extent not to] exceed the maximum punishment prescribed for the offense, the commission of which was the object of the ... conspiracy." The underlying offense at issue in appellants' section 955c conspiracy is found at 21 U.S.C.A. sec. 955a(a), which states that it is unlawful for a person aboard a vessel subject to the jurisdiction of the United States to possess marijuana with an intent to unlawfully distribute the marijuana.

*Albernaz* makes clear that the crucial issue to be decided is whether Congress intended to authorize separate punishments for violations of sections 955c and 963; if such was the case, "imposition of such sentences does not violate the [double jeopardy clause of the] Constitution". *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145;[13] *see United States v. Luis-Gonzalez*, 719 F.2d 1539, 1545–48 (11th Cir.1983) (following *Albernaz*). Our analysis of Congress's intent must begin with the words of the statutes. *Albernaz*, 450 U.S. at 336, 101 S.Ct. at 1141. As in *Albernaz*, the statutes in question here "are unambiguous on their face and each authorizes punishment for a violation of its terms." *Id.*

In deciding whether Congress intended to impose separate punishments for multiple offenses arising from a single transaction, we must look to the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) and its progeny. This court has concluded that the proper analysis is twofold: "(1) Whether each offense requires proof that the other does not; and (2) whether each offense requires proof of a different objective of the conspiratorial agreement." *United States v. Boldin*, 772 F.2d 719, 727 (11th Cir.1985).

The section 963 conspiracy here requires the government to prove "(1) the existence of an agreement, (2) an overt act in furtherance of the conspiracy, (3) a controlled substance, (4) brought into the United States." *Id.* To prove conspiracy to possess with intent to distribute, on the other hand, the government must establish (1) the existence of an agreement, (2) that appellants were on board a stateless vessel, (3) an overt act in furtherance of the con-

---

12. "This subchapter" refers to Subchapter 2 of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

13. *Albernaz,* which involved separate conspiracy convictions under 21 U.S.C.A. secs. 846 and 963 arising from a single drug transaction, differs from the case at hand in one minor, and we believe irrelevant, point. Section 846 concerns conspiracies to violate Subchapter 1 of the Comprehensive Drug Abuse Prevention and Control

Act of 1970, while Section 963 concerns conspiracies to violate Subchapter 2 of that act. In the case at hand, however, both conspiracy provisions involve Subchapter 2 of the act. While the Court mentioned this point in *Albernaz,* 450 U.S. at 336, 101 S.Ct. at 1141, the Court neither emphasized nor based its decision or reasoning on the fact that the two sections in *Albernaz* referred to two separate subchapters of the act.

spiracy, (4) possession, (5) intent to distribute, and (6) a controlled substance. *See id.* The statutes therefore meet the *Blockburger* test since each requires proof of at least one fact that the other does not. *See United States v. Vidal-Hungria,* 794 F.2d 1503, 1511 (11th Cir.1986) ("If the elements of proof for the substantive offenses differ, the elements of proof of the existence of an agreement, the objective of which is to commit the different substantive offenses, necessarily differ.")[14]

■ Appellants also assert that the legislative history on the issue of multiple punishments is ambiguous and that we should therefore apply the rule of lenity. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). We should apply the rule of lenity, however, only if the statute's legislative history is ambiguous on the question of multiple punishments. *Albernaz,* 450 U.S. at 342, 101 S.Ct. at 1144. The legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970 admit-

tedly does not address whether Congress intended to authorize multiple punishments for conspiring to import drugs (section 963) and conspiring to possess drugs on board a stateless vessel with intent to distribute the drugs (section 955c). This silence, however, does not create an ambiguity. *Id.* at 340–41, 101 S.Ct. at 1143; *Luis-Gonzalez,* 719 F.2d at 1547. Thus, the rule of lenity is inapposite. *Albernaz,* 450 U.S. at 343, 101 S.Ct. at 1144.[15]

■ In short, our reading of the language of the two statutes as well as the legislative history of section 955c compels us to conclude that Congress intended for each to provide a separate punishment. Thus, it did not violate appellant's double jeopardy rights to indict and convict them under both 955c and 963.

## III. CONCLUSION

For the reasons explained above, we reject appellants' arguments.[16] The order of the district court therefore is AFFIRMED.

---

**14.** Although not couched in terms of double jeopardy analysis, the new Fifth Circuit implicitly has approved double conspiracy convictions arising from a single drug transaction. In *United States v. Michelena-Orovio,* 719 F.2d 738, 756–57 (5th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984), the court concluded that "once the jury had reasonably concluded ... that the defendant was guilty of conspiracy to import marijuana, it was entitled to infer that the defendant was also guilty of participation in the conspiracy to possess the marijuana with intent to distribute it." *Michelena-Orovio* involved a section 963 conspiracy based on 21 U.S.C.A. sec. 952(a) (importation) and a 21 U.S.C.A. sec. 846 conspiracy based on 21 U.S.C.A. sec. 841(a) (possession with intent to distribute). This circuit specifically adopted the *Michelena-Orovio* position in *United States v. Gort,* 737 F.2d 1560, 1564 (11th Cir.1984).

**15.** Congress did not enact 21 U.S.C.A. secs. 955a–d as part of the 1970 act; the four new provisions were engrafted onto Subchapter 2 of the act in 1980. Pub.L. No. 96–350, secs. 1–4, 94 Stat. 1159–60 (1980). These sections were intended to "fill[ ] the statutory void in high seas drug law," H.Rep. No. 96–323, 96th Con. (1980); *see* S.Rep. 96–855, 96th Con. (1980), U.S.Code Cong. & Admin.News 1980, p. 2785, by snaring those drug traffickers who were able to fall through the cracks of the 1970 act. *See Luis-Gonzalez,* 719 F.2d at 1546–47. We may assume

that Congress knows the law; thus, "Congress was aware of the *Blockburger* rule and legislated with it in mind." *Albernaz,* 450 U.S. at 341, 342, 101 S.Ct. at 1143, 1144. It also was aware of section 963 and its application. The clarity of the statutory provisions at issue and the lack of contrary intent in the legislative history make clear that Congress intended to authorize separate punishments for conspiracies to violate sections 955a–d as well as for conspiracies under section 963. *See Albernaz,* 450 U.S. at 343, 101 S.Ct. at 1144; *Luis-Gonzalez,* 719 F.2d at 1546–47.

**16.** As a final matter, we note that appellants raised two other issues that merit little discussion. First, appellants asserted that the trial court committed reversible error by admitting into evidence the package of documentation papers for the ALVAREZ REAL that were found aboard the GRAMA J. This was not an abuse of discretion. Second, appellants' Arragon and Payan claim that their constitutional right to effective assistance of counsel was impermissibly abridged when the trial court refused their attorneys' motion to visit the boatyards in Colombia where the two appellants were hired for the voyage. Appellants Arragon and Payan failed to make the strong showing of necessity that such a request requires. *See United States v. Davis,* 582 F.2d 947, 941–52 (5th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979).