**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**O.Z. HOWARD, Alfred James, and Ceabon Jackson, Defendants–Appellants.**

No. 88–5749.

United States Court of Appeals,
Eleventh Circuit.

March 1, 1990.

Curtis L. Jones, Jr., Miami, Fla., for Howard & James.

Miguel Caridad, Asst. Federal Public Defender, Miami, Fla., for Jackson.

Dexter W. Lehtinen, U.S. Atty., Terry L. Lindsey, Asst. U.S. Atty., Carol E. Herman, Patricia Fahlbusch, Miami, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges and YOUNG *, Senior District Judge.

EDMONDSON, Circuit Judge:

Appellant-defendants Howard and James appeal their convictions of conspiracy and possession with intent to distribute a large quantity of marijuana. Appellant-defendant Jackson appeals his possession conviction. We affirm.

The unduly low weight of an incoming shipping container aroused the suspicions of Customs agents, who, upon opening the container, found much marijuana. After the Customs Service contacted the Drug Enforcement Administration, government agents installed electronic tracking devices inside the container and delivered it to a Miami address in accord with the original shipping instructions.[1]

While Howard was working at his place of business, a stranger approached him and offered to pay him three thousand dollars to accept delivery of a trailer. Howard, using a false name as he was instructed by the unknown customer, accepted the delivery. The stranger returned the next day and asked Howard if he would like to earn an additional three thousand dollars by helping unload the same trailer. Howard agreed.

While Jackson was walking home from work, two strangers approached and offered him five hundred dollars to help unload a trailer located in a nearby vacant lot. Jackson agreed, telling a woman to whom he had been talking that he would be back in about thirty minutes.

While at a gas station, James met a man who offered to pay James "a couple thou-

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

1. This container converted into a trailer when hitched to the back of a truck. Both "container" and "trailer" refer to the same object.

sand dollars" to unload a trailer. James agreed.

Later, at night and in a vacant lot, as all three defendants were moving bales from the container to a smaller truck, DEA agents, alerted by the tracking devices, arrived and arrested defendants. Jackson attempted to run away as officers approached.

 Defendants challenge the sufficiency of the evidence supporting their convictions. We look at this evidence in the light most favorable to the government and affirm if a reasonable jury could have found defendants guilty beyond a reasonable doubt. *See United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984) (citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). To support a conviction of possession with intent to distribute, the evidence must show three things: that defendants possessed marijuana, knew that the substance was marijuana, and intended to distribute it. *Id.* at 778–79. Distribution includes acts in furtherance of a transfer or sale, such as arranging the delivery, *United States v. Brunty*, 701 F.2d 1375 (11th Cir.1983), and has been held to include participation in the transfer of marijuana from a mothership to off-load boats. *United States v. Pool*, 660 F.2d 547, 561 (5th Cir. Unit B 1981).

All three defendants, by unloading about twenty of the bales, possessed marijuana. The jury looked at some of the bales in court and was entitled to infer an intent to distribute marijuana from the quantity—each bale weighed at least fifty pounds—possessed by defendants. *See Montes–Cardenas*, 746 F.2d at 778. In addition, defendants were moving the marijuana from the shipping container to another vehicle so that the drug could be taken elsewhere. Finally, Howard was offered six thousand dollars to accept delivery of a truck and to help unload it; James was offered "a couple of thousand" dollars to help unload a truck; and Jackson was offered five hundred dollars to help unload a truck. Each defendant was offered an extraordinarily large sum of money for a small amount of work. We believe this unusual financial arrangement, combined with testimony about the noticeable odor of marijuana in and around the container, allowed the jury to find beyond a reasonable doubt that defendants knew they were unlawfully furthering the distribution of marijuana.

 To support a conspiracy conviction, the government must show that an agreement existed, that defendants knew of its general purpose, and that defendants voluntarily participated in the conspiracy. *See United States v. Gonzalez*, 810 F.2d 1538 (11th Cir.1987). Howard and James dispute only the knowledge element of the conspiracy charge. Evidence supports this element, however, if the government was able to show that defendants knew the essential nature of the conspiracy. *See United States v. Alvarez*, 755 F.2d 830 (11th Cir.1985) (citing *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947)). The state can show participation in a conspiracy by either direct or circumstantial evidence. *United States v. Roper*, 874 F.2d 782, 787 (11th Cir.1989) (citing *Gonzalez*, 810 F.2d at 1542).

The evidence here showed considerably more than defendants' mere presence at the vacant lot. Howard and James admitted to police that they thought they might have been involved in an illegal venture. Moreover, evidence showed that defendants were loading a substantial amount of marijuana from the container into a smaller truck and that each of them had been offered a large sum of money to do so. We believe this evidence was sufficient to allow a jury to conclude, beyond a reasonable doubt, that Howard and James knew the essential nature of the conspiracy, that is, to distribute marijuana.

In addition to other evidence, each defendant testified at the trial and offered his story, denying knowledge of marijuana and explaining his acts. The jury was entitled to reject this testimony: defendants subjected themselves to a credibility determi-

nation and ran the risk of bolstering the government's case. *See United States v. Bennett*, 848 F.2d 1134, 1139 (11th Cir. 1988) (jury may view defendant's false explanatory statement as substantive evidence proving guilt); *United States v. Eley*, 723 F.2d 1522, 1525 (11th Cir.1984) (same). Sufficient evidence supported the convictions.

Defendants have said they did not know the bales were marijuana and challenge the deliberate ignorance instruction given by the trial court. The instruction is appropriate when the evidence points in the direction of deliberate ignorance. *United States v. Alvarez*, 837 F.2d 1024, 1028 (11th Cir.1988); *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir.1984); *United States v. Batencourt*, 592 F.2d 916, 917–18 (5th Cir.1979). Here, defendants say that unknown persons offered them large sums of money in return for little effort. In addition, they were unloading, at night and in a lonely vacant lot, a truck full of strange-smelling herbal cargo. This evidence pointed in the direction of deliberate ignorance. *See Alvarez*, 837 F.2d at 1028 (stranger offered defendant $1500 to carry load of rotten fish from Aruba to Nassau); *Aleman*, 728 F.2d at 494 (unknown man hired defendant to carry briefcase from Colombia to New York); *Batencort*, 592 F.2d at 918 (defendant, promised large amount of money to deliver suitcase, thought suitcase might contain contraband).

Finally, defendants claim that the trial court erroneously admitted a hearsay receipt into evidence. The receipt was used to show that more than a thousand kilograms of marijuana was involved. The error the trial court may have committed was harmless. Ample uncontradicted evidence existed to support a jury finding that the weight of the marijuana easily exceed one thousand kilograms. For example, testimony indicated the government seized 132 bales weighing between fifty and eighty-five pounds each. Even if we assume that each bale weighed the minimum estimate,

here fifty pounds, the resulting weight exceeds a thousand kilograms.

AFFIRMED.