819 F.2d 1043
 23 Fed. R. Evid. Serv. 456
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carmelo AYARZA-GARCIA, Enrique Zuarez-Calderon, Alcadio
Rafael Perez-Cardona, Jorge Ariza-Cotex, Alberto
Gabriel-Lopez, Jorge Curvelo-Fuentes, Cristobal
Caicedo-Angulo, Domingo Guerra-Villarreal, Daniel
Montano-Ocampo, Defendants- Appellants.
 No. 86-5277.
 United States Court of Appeals,
Eleventh Circuit.
 June 22, 1987.
 
 John D. Lazarus, Peggy Fisher, Miami, Fla., for Carmelo Ayarza-garcia.
 Dennis G. Kainen, Miami, Fla., for Enrique Zuarez-Calderon.
 Jeffrey A. Rynor, Miami, Fla., for Jorge Ariza-Cortex.
 Leon E. Tozo, Coconut Grove, Fla., for Alberto Gabriel Lopez.
 Jorge A. Sibila, Miami, Fla., for Jorge Curvelo-Fuentes.
 Kathy Hamilton, Miami, Fla., for Cristobal Caicedo-Angulo.
 Sheryl J. Lowenthal, Coral Gables, Fla., for Perez-Cardona.
 Ellen L. Leesfield, Coral Gables, Fla., for Montano-Ocampo.
 Jose R.E. Batista, Hialeah, Fla., for Domingo Guerra-Villareal.
 Leon B. Kellner, U.S. Atty., Charles V. Senatore, David O. Leiwant, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for the U.S.
 Appeals from the United States District Court for the Southern District of Florida.
 Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Appellants seek reversal of their convictions for conspiracy to possess marijuana on the high seas with intent to distribute and possession of marijuana on the high seas with intent to distribute in violation of 21 U.S.C.A. Secs. 955a(a), 955c and 18 U.S.C.A. Sec. 2. Appellants assert that the district court erred in denying their motions for judgment of acquittal, in determining that the issue of the sufficiency of the evidence to establish subject matter jurisdiction was not appropriate for decision by pretrial motion to dismiss, in failing to grant Appellants' motions for severance and in denying Appellants' post-trial motions based on alleged jury impropriety without conducting an evidentiary hearing. Because we find no error in the district court's rulings on these issues, we affirm Appellants' convictions.
 
 I. BACKGROUND
 
 2
 Appellants were nine of the ten members of the crew of the vessel Somape IV.[1] On or about December 28, 1985, the Coast Guard cutter Diligence, on routine patrol in the Yucatan Channel, picked up the Somape IV on its radar. The Somape IV was traveling in a northwesterly direction on a heading which, if continued, would cause it to come ashore at a point along the Louisiana coastline. Upon interception of the Somape IV by the Diligence approximately two hours later, the Coast Guard determined that the Somape IV was a converted fishing vessel. The vessel's name was displayed on the bow and stern, but the vessel flew no flag and bore no home port designation.
 
 
 3
 After unsuccessful attempts to hail the Somape IV by radio in both English and Spanish, the Coast Guard cutter moved closer to the vessel and contact with the vessel was attempted through use of a loudhailer, again in both English and Spanish, and by means of short blasts on the ship's whistle. Appellant Ariza-Cotex, after making one initial appearance and disappearing into the pilothouse, returned and responded to questions by the Coast Guard. According to the government's evidence, one of these questions was the nationality of the vessel, to which Ariza-Cotex responded "Colombiano." Ariza-Cotex also gave the Coast Guard permission to board the Somape IV where a subsequent search by Coast Guard officers revealed papers showing the vessel was in fact of Panamanian registry and 18,000 pounds of marijuana.
 
 
 4
 Appellants were indicted for conspiracy on the high seas to possess marijuana with intent to distribute and possession of marijuana on the high seas with intent to distribute. Appellants filed pretrial motions for severance and to dismiss for lack of subject matter jurisdiction. The district court denied the motion to sever and reserved ruling on the motion to dismiss because it determined that the jurisdictional issue was inappropriate for determination by pretrial motion. At the close of the government's case, Appellants made a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29, arguing that there was insufficient evidence to establish subject matter jurisdiction over the Somape IV, which motion was denied. Appellants did not present any evidence. The jury returned a verdict against Appellants on both counts and each Appellant was sentenced to a term of imprisonment and fined.
 
 
 5
 After the trial, one of the jurors, Charles Whited, who was a columnist for the Miami Herald, wrote a newspaper article describing the jury deliberations in Appellants' case and indicating that one juror, Robert S. Leeds, had voted for conviction "under duress." Appellants filed post-trial motions alleging, inter alia, possible jury impropriety. The district court denied these motions without an evidentiary hearing. This appeal followed.
 
 II. DISCUSSION
 
 6
 A. Sufficiency of the Evidence to Establish Jurisdiction
 
 
 7
 Section 955a(a) provides in pertinent part that "[i]t is unlawful for any person on board ... a vessel subject to the jurisdiction of the United States on the high seas, ... to possess with intent to ... distribute a controlled substance." 21 U.S.C.A. Sec. 955a(a). The term "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958." Id. Sec. 955b(d). The Somape IV was validly registered in Panama and thus was not a vessel without nationality. Assertion of jurisdiction over the Somape IV was based on the vessel being one "assimilated to a vessel without nationality."
 
 
 8
 Under the Convention on the High Seas, a ship is required to sail under the flag of only one state and is subject to the exclusive jurisdiction of that state while on the high seas. Convention on the High Seas, Art. 6(1), opened for signature, April 29, 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200. However, Article 6(2) of the Convention, incorporated into section 955b(d) as the definition of a vessel assimilated to statelessness, provides that "[a] ship which sails under the flags of two or more States, using them according to convenience, may not claim any of the nationalities in question with respect to any other State, and may be assimilated to a ship without nationality." Id. Art. 6(2). Thus, a vessel is subject to the jurisdiction of the United States under section 955b(d) even if validly registered in another country if it "sails under the authority of two or more states, and uses them according to convenience" or falsely claims a nationality other than that of the country in which it is registered. United States v. Gonzalez, 810 F.2d 1538, 1541 (11th Cir.1987) (quoting United States v. Batista, 731 F.2d 765, 767 (11th Cir.1984)); accord, United States v. Martinez, 700 F.2d 1358, 1362 (11th Cir.1983) (United States has jurisdiction if defendants "intended to use two flags or nationalities 'according to convenience' ").
 
 
 9
 In determining whether there was sufficient evidence to establish that the Somape IV was a vessel assimilated to statelessness, the standard of review is whether, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could find that the evidence established this element beyond a reasonable doubt as to each appellant. See United States v. Cole, 755 F.2d 748, 755 (11th Cir.1985). All reasonable inferences must be drawn in favor of the jury's verdict. Id.
 
 
 10
 Appellants assert that the evidence regarding Ariza-Cotex's statement that the vessel was Colombian had been substantially impeached. Appellants argue that the question to which Ariza-Cotex replied "Colombiano" had in fact been (or at least had been understood to be) "what is your nationality?" Ariza-Cotex is Colombian. In support of this theory, Appellants point to the entry from the Diligence's log relating to this conversation, which was made contemporaneously with the conversation by Petty Officer Amador, who was serving as Spanish translator in questioning Ariza-Cotex. The entry originally had stated that the person on the vessel said Colombia was his nationality, but the "his" had been crossed out by Amador's superior officer and replaced with "its" to indicate that the response referred not to Ariza-Cotex but to the vessel. Appellants also point to testimony indicating that the statement was made at a distance of 30 yards, that Ariza-Cotex spoke without amplification, and that there was engine noise from the Coast Guard cutter. There also was somewhat conflicting testimony as to whether the Coast Guard had sought a non-objection statement from Panama or from Colombia before arresting Appellants. Appellants further argue that, even assuming Ariza-Cotex did say the vessel was Colombian, this statement was insufficient to establish an intent to sail under the authority of two states, using them for convenience, particularly when made by a mere crew member rather than the captain of the vessel.
 
 
 11
 We find that there was sufficient evidence from which a reasonable jury could conclude that the Somape IV was a vessel assimilated to statelessness. Credibility choices in deciding which version of a story to believe are a matter for the jury. Cole, 755 F.2d at 755. The government need not prove that the facts of the case are inconsistent with the defense's theory of the case; the jury is free to choose among alternative reasonable constructions of the evidence. Id. The government introduced evidence that the alteration in the ship's log was to correct a grammatical error, that the log entry had been altered in other respects to correct grammatical errors, that the Coast Guard officers could hear Ariza-Cotex clearly and that the word used by Amador in asking the question regarding nationality of the vessel was "barco," while the word Amador would have used to ask the nationality of the crew would have been "miembros." The jury's decision in this case to believe the Coast Guard's explanation that recordation in the Diligence's log of the word "his" instead of "its" was the result of a grammatical mistake and that Ariza-Cotex's response was clearly and accurately heard was well within the jury's province. Cf. Martinez, 700 F.2d at 1362 (it was within jury's province to resolve factual dispute as to whether captain misunderstood question when asked nationality of ship in determining whether defendants were claiming two nationalities according to convenience).
 
 
 12
 There also was evidence from which a reasonable jury could have found that Ariza-Cotex was acting as a spokesman for the crew when he made the statement that the vessel was Colombian. Ariza-Cotex initially appeared from the pilot house, and, after first having disappeared into the pilot house again, returned alone to communicate with the Coast Guard. In addition, when the Coast Guard questioned the crew on the deck of the Somape IV, Ariza-Cotex spoke for the crew and the other crew members agreed with his statements, including statements that there was no captain, that all the crew members were second in command, and that the crew were "pirates" (this remark accompanied by laughter from the crew). There also was testimony that it was Ariza-Cotex who had the crew assemble on the fantail of the Somape IV in response to a request from the Coast Guard, that it was he who gave the Coast Guard permission to conduct a tour of the Somape IV and to search the hold and that he told the Coast Guard that the Panamanian registration papers were in the pilot house. Cf. Gonzalez, 810 F.2d at 1542 (statement by acting captain that vessel was of one nationality when it was in fact registered in another nation was a factor indicating that vessel was assimilated to statelessness).
 
 
 13
 Finally, there was evidence that the vessel displayed no home port designation and flew no flag, thus facilitating its ability to claim whatever nationality it chose. Cf. United States v. Matute, 767 F.2d 1511, 1513 (11th Cir.1985) (absence of permanent home port designation was a factor indicating that crew wanted to be able to manipulate vessel's nationality on short notice). Viewing this evidence in the light most favorable to the government, a reasonable jury could find that the Somape IV carried no home port designation and flew no flag in order to allow its crew to manipulate its nationality, and that Ariza-Cotex, acting as a spokesman for the crew, did in fact make such a false claim of Colombian nationality when he knew that the Somape IV was registered in Panama. Cf. Martinez, 700 F.2d at 1362 (evidence that captain initially stated vessel was Costa Rican, then stated that it was Honduran, together with conflicting testimony as to whether vessel was flying a flag, was sufficient to support jury instruction regarding assimilation to statelessness).
 
 
 14
 B. Proper Procedure to Challenge Jurisdiction
 
 
 15
 Appellants argue that the district court erred in reserving decision on Appellants' motion to dismiss for lack of subject matter jurisdiction and ruling that the jurisdictional issue should go to the jury. They assert that the jurisdictional issue was a matter of law that should have been decided by the trial court on the pretrial motion to dismiss. We find that the district court was correct in its determination that Appellants' subject matter jurisdiction challenge was not appropriate for determination by the court on a pretrial motion to dismiss.
 
 
 16
 Fed.R.Crim.P. 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." Questions of subject matter jurisdiction may be raised under Rule 12(b), but also may be raised at any time during the pendency of the proceedings. Rule 12(b)(2); C. Wright, Federal Practice and Procedure (Criminal) Sec. 193, at 693-94 (2d ed. 1982). As the language of the rule indicates, when the issue raised involves a question that may not be determined without "trial of the general issue" it is not proper for decision by pretrial motion. The "general issue" has been defined as evidence relevant to the question of guilt or innocence. United States v. Barletta, 644 F.2d 50, 58 (1st Cir.1981).
 
 
 17
 It follows that a pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue. United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); United States v. King, 581 F.2d 800, 802 (10th Cir.1978). Rule 12 is not intended to authorize "speaking motions" through which the truth of the allegations in an indictment are challenged. United States v. Greater Syracuse Bd. of Realtors, Inc., 449 F.Supp. 887, 899 (N.D.N.Y.1978) (challenge to sufficiency of allegations of effect on interstate commerce in criminal antitrust case); C. Wright, supra, Sec. 194, at 714. Thus, when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial. Greater Syracuse, 449 F.Supp. at 899. This is clearly the case when the jurisdictional requirement is also a substantive element of the offense charged. See id.
 
 
 18
 Section 955a(a) makes the jurisdictional element one of the material elements of the crime of possession of a controlled substance with intent to distribute on the high seas. United States v. Julio-Diaz, 678 F.2d 1031, 1032-33 (11th Cir.1982) (addressing alternative jurisdictional base that vessel is a United States vessel); see 21 U.S.C.A. Sec. 955a(a). Therefore, because Appellants' jurisdictional challenge was a challenge to the sufficiency of the government's evidence which would have involved determination of issues of fact going to the merits of the case, the district court did not err in determining that resolution of the jurisdictional question by pretrial motion to dismiss was not appropriate in this case. The proper procedure for raising Appellants' challenge to the sufficiency of the government's evidence to support a finding of assimilation to statelessness was by a motion for judgment of acquittal under Rule 29 and not by a pretrial motion to dismiss. Upon denial of Appellants' Rule 29 motions, the question was one for determination by the jury.[2]
 
 C. Denial of Severance Motion
 
 19
 Fed.R.Crim.P. 14 provides that, when a defendant will be prejudiced by a joint trial, the court may grant a severance. Appellants made a motion to sever on the grounds that admission of Appellant Ariza-Cotex's alleged statement that the vessel was Colombian in a joint trial would violate their Sixth Amendment right to confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[3] In Bruton, the Supreme Court held that the admission of the confession of a co-defendant which was inadmissible hearsay as to the petitioner and which implicated the petitioner violated the petitioner's right to confrontation because the statement was not subject to cross-examination and that limiting instructions could not cure this defect. Id. at 137, 88 S.Ct. at 1628.
 
 
 20
 A trial court's denial of a severance motion is reviewed under the abuse of discretion standard. Cole, 755 F.2d at 762; United States v. Esle, 743 F.2d 1465, 1476 (11th Cir.1984), reh'g en banc denied, 755 F.2d 176 (11th Cir.1985). The general rule is that coconspirators should be tried in a joint trial. Cole, 755 F.2d at 762. In making its initial determination as to whether to depart from that rule, the district court balances the prejudice inherent in a joint trial against the interests of judicial economy. Id. That decision will be overturned on appeal only if the appellant shows that he "suffered compelling prejudice against which the trial court was unable to afford protection." Id.; accord, Esle, 743 F.2d at 1476.
 
 
 21
 The trial court denied the motions for severance because it found that the statement was admissible against Ariza-Cotex's co-defendants as a statement of a coconspirator made in furtherance of the conspiracy. If the district court was correct in this determination, then it did not abuse its discretion in denying Appellants' severance motions. Bruton applies only to statements that are inadmissible hearsay as to the petitioner. United States v. Burroughs, 650 F.2d 595, 597 n. 3 (5th Cir. Unit B), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). Therefore, Bruton is not violated when the statement of a defendant is admissible against the petitioner as a coconspirator's statement made in furtherance of the conspiracy. Id., accord, United States v. Archbold-Newball, 554 F.2d 665, 677 (5th Cir.), cert. denied sub nom. Ramirez-Betancourt v. United States, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).
 
 
 22
 The test for the admissibility of the statement of a coconspirator under Fed.R.Evid. 801(d)(2)(E)[4] requires that the government have substantial independent evidence showing (1) the existence of a conspiracy, (2) that the complaining defendant and the coconspirator making the statement were both members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir.), cert. denied sub nom. Weeks v. United States, 464 U.S. 917, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983); United States v. James, 590 F.2d 575, 581 (5th Cir.), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) (en banc). Appellants have not contested the sufficiency of the evidence to establish a conspiracy in which they were participants along with Ariza-Cotex. Therefore, the first two elements necessary to satisfy the test for admissibility of a coconspirator's statement are present in this case. It also is clear that the statement was made during the course of the conspiracy. Thus, the question is whether the requirement that the statement have been made in furtherance of the conspiracy is met in this case.
 
 
 23
 The rationale of the coconspirator exception to the hearsay rule is that conspirators, as partners in crime, are agents for each other, "[a]nd just as the declarations of an agent bind the principal only when the agent acts within the scope of his authority, so the declaration of a conspirator must be made in furtherance of the conspiracy charged." Anderson v. United States, 417 U.S. 211, 218 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1974). The "in furtherance of the conspiracy" standard, however, must not be applied too strictly, "lest we defeat the purpose of the exception." United States v. Miller, 664 F.2d 94, 98 (5th Cir. Unit B 1981), cert. denied, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982) (quoting United States v. James, 510 F.2d 546, 549 (5th Cir.), cert. denied sub nom. Vasquez v. United States, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975)).
 
 
 24
 The determination as to whether the statement of a coconspirator was made in furtherance of the conspiracy is a finding of fact which may be overturned only if clearly erroneous. United States v. Posner, 764 F.2d 1535, 1537 (11th Cir.1985). Ariza-Cotex's statement regarding the nationality of the vessel was made in response to initial inquiries of the Coast Guard. As discussed above, the evidence was sufficient to establish that the statement was made by Ariza-Cotex as spokesman for the crew and as part of an effort to claim a false nationality for the Somape IV. Under these circumstances, the district court's determination that the statement was made in furtherance of the conspiracy was not clearly erroneous.[5]
 
 D. Jury Impropriety
 
 25
 As their last point on appeal, Appellants argue that an article written by juror Whited describing the jury deliberations in Appellants' trial indicates that juror Leeds may have voted under duress and that, therefore, the verdicts against them may be contrary to the law of unanimity. They assert that the district court should have investigated these allegations of impropriety.
 
 
 26
 The Whited article indicated that all the jurors believed that the law on United States jurisdiction over stateless vessels covered the Somape IV, but that several of the jurors, and particularly Robert Leeds, were concerned about Coast Guard seizure of foreign vessels on the high seas. The article indicated that Leeds wanted to know "[w]hat gives the United States the right to pass a law unilaterally making the high seas our sphere of influence" and that, although Leeds favored a guilty verdict, "he wasn't going to vote until this had been clarified." Finally, the jurors sent a written question to the judge asking whether the law giving the United States the power to seize vessels on the high seas was passed by the United States alone or in conjunction with other nations. The judge recalled the jury to the courtroom and instructed them that Congress had passed the law and that "whether other nations are involved in any way is not germane to the issue before you." The article states that, after return to the jury room, Leeds stated "All right. I'll go along. But only because I'm being practical, under duress." Appellants filed post-trial motions based in part on alleged jury impropriety, which were denied by the district court without an evidentiary hearing.
 
 
 27
 The trial court has broad discretion as to how to proceed when confronted with an allegation of jury misconduct, including discretion with regard to the initial decision as to whether to interrogate jurors. Yonn, 702 F.2d at 1344-45. Cases dealing with the degree of investigation required fall along a continuum focusing on two factors: the certainty that some impropriety has occurred and the seriousness of the accusation. United States v. Caldwell, 776 F.2d 989, 998 (11th Cir.1985). The more speculative or unsubstantiated the allegation of misconduct, the less burden there is to investigate; the more serious the potential jury contamination, especially where alleged extrinsic influence is involved, the heavier the burden to investigate. Id. Appellants argue that, because the allegation in this case comes from a fellow juror and therefore is reliable and because the investigation would only require that juror Leeds be interviewed, the district court abused its discretion in not investigating.
 
 
 28
 We find no merit in this contention. Post-verdict inquiries into the existence of impermissible extraneous influences on a jury's deliberations are allowed under appropriate circumstances, but inquiries that seek to probe the mental processes of jurors are impermissible. Llewellyn v. Stynchcombe, 609 F.2d 194, 196 (5th Cir.1980); accord, United States v. Campbell, 684 F.2d 141, 151 (D.C.Cir.1982) (jury's verdict will not be upset on basis of juror's post-trial report of jury deliberations unless extraneous influence is shown; evidence of discussion among jurors, intimidation of one juror by another, and other intra-jury influences on the verdict are not competent to impeach the verdict.) See United States v. Gipson, 553 F.2d 453, 457 n. 6 (5th Cir.1977) (juror's testimony relating to mental process by which verdict reached is not competent evidence to impeach that verdict); Fed.R.Evid. 606(b) (same).
 
 
 29
 The defendant bears the burden of establishing that extrinsic matters have been considered by the jury during its deliberations. United States v. Winkle, 587 F.2d 705, 714 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). It is only when the defendant has made a colorable showing of extrinsic influence that the court must investigate the asserted impropriety. Id.
 
 
 30
 The Whited article is insufficient to raise an inference that there was any jury impropriety in this case. The information in the Whited article merely describes the jury's internal deliberations and the mental processes by which its various members reached their verdict. It raises no inference that the verdict was the result of improper consideration of extraneous information or duress from extrinsic sources.[6]
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The tenth crew member, Orlando Cesar Fallase, also was indicted and convicted, but is not a party to this appeal
 
 
 [2]
 We note that this Court has upheld factual findings on the statelessness issue made by the district court in connection with denial of a motion to dismiss. United States v. Matute, 767 F.2d 1511, 1511 (11th Cir.1985). The parties in Matute, however, did not raise any issue as to the proper procedure for determining the sufficiency of the evidence to support a finding of statelessness. Further, while the Matute Court did review the district court's findings of fact and determine that the evidence established that the vessel was sailing under the authority of two nations, it appears that the appellants' argument in Matute was not that there was insufficient evidence to support a finding of jurisdiction, but rather the legal argument that a vessel could not be considered assimilated to statelessness under section 955b(d) if it was validly registered in a foreign country. See id. at 1511, 1513
 
 
 [3]
 Appellant Ayarza-Garcia does not raise this argument in his brief and did not adopt the arguments of his co-Appellants. Appellant Ariza-Cotex also clearly cannot assert prejudice from joint trial because his statement was admissible against him
 
 
 [4]
 Fed.R.Evid. 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."
 
 
 [5]
 Because we find that the district court did not err in determining that Ariza-Cotex's statement was admissible against the other Appellants under Rule 801(d)(2)(E), we do not reach the government's arguments that there was no Bruton violation because the statement was admissible against Appellants as an adoptive admission under Fed.R.Evid. 801(d)(2)(B) or because the statement did not directly implicate any particular co-defendant in an element of the offense charged. See United States v. Taylor, 792 F.2d 1019, 1023 (11th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987); United States v. Satterfield, 743 F.2d 827, 849 (11th Cir.1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985)
 
 
 [6]
 At oral argument Appellants' counsel argued that the statement in the article that "Juror Jack Welch, a businessman, former naval officer and yachtsman, pointed out that boardings at sea are governed by maritime law" indicated that the jurors might have considered extrinsic matters. We find this statement insufficient to raise a colorable claim of jury impropriety on the facts of this case. The absence of any colorable claim of jury impropriety distinguishes this case from those relied upon by Appellants in their briefs. E.g., United States v. Brantley, 733 F.2d 1429, 1439-40 (11th Cir.), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1984) (district court abused discretion in not conducting more complete inquiry when evidence showed that one juror stated that another juror had informed jury that she knew daughter of one of defendants and that defendant had been in this kind of trouble before)