**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Donald L. FERGUSON, Defendant.**

**No. 99–116–CR.**

United States District Court,
S.D. Florida.

July 7, 2000.

Paul Pelletier, Asst. U.S. Atty., United States Attorney's Office for the Southern District of Florida, Miami, FL, for Plaintiff.

Neal Sonnet, Miami, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

HIGHSMITH, District Judge.

THIS CAUSE is before the Court upon Defendant Donald L. Ferguson's motion to dismiss the superseding indictment. After the motion had been fully briefed, the Court heard oral argument from counsel on June 12, 2000. For the reasons set forth below, Defendant's motion to dismiss is denied.

### I. BACKGROUND [1]

In this case of first impression, the United States brings a criminal prosecution against a former criminal defense attorney for money laundering in violation of 18 U.S.C. § 1957.[2] The superseding indict-

---

1. The factual background of the case is derived from the representations of the parties in their written submissions and oral arguments.

2. The United States has previously prosecuted criminal defense attorneys for money launder-

ment charges Defendant with four counts of money laundering, in violation of § 1957, and one count of conspiring to launder money, in violation of § 1957 and 18 U.S.C. § 1956(h). Additionally, the superseding indictment contains a forfeiture count, involving the proceeds of the alleged money laundering offenses. The factual scenario underlying the money laundering scheme charged in the superseding indictment is unusual because it involved the payment of a criminal defendant's legal fees by a third-party. Specifically, Salvador Magluta, on four separate occasions, purportedly transferred large sums of cash, totaling $566,400.00, to Defendant, who deposited these monies into his trust accounts, ostensibly as payment for Benjamin Kramer's criminal defense.[3]

The United States asserts that, by accepting and then depositing these payments, Defendant violated § 1957, a broadly worded statute that criminalizes a wide range of financial transactions involving criminal proceeds. *See United States v. Allen,* 129 F.3d 1159, 1165 (10th Cir.1997) ("A defendant must know only that she is engaging in a transaction and that the subject of the transaction is criminally derived property."). Section 1957 provides, in pertinent part:

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater

than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

. . . . .

(c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

(d) The circumstances referred to in subsection (a) are—

(1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States . . . .

. . . . .

(f) As used in this section—

(1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, *but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution;*

---

ing under § 1957's sister statute, 18 U.S.C. § 1956. *See, e.g., United States v. Reed,* 77 F.3d 139 (6th Cir.1996) (en banc). The significance of the instant prosecution lies in the fact that liability under § 1957 is much stricter than liability under § 1956. *See United States v. Wynn,* 61 F.3d 921, 927 (D.C.Cir. 1995) ("Due to the omission of a 'design to conceal' element, section 1957 prohibits a wider range of activity than money 'laundering,' as traditionally understood. Thus, a sec-

tion 1957 violation is easier to prove, in this respect, than a section 1956 violation.") (citation omitted).

**3.** At the time of the charged offenses, Salvador Magluta had been indicted in a massive drug conspiracy case, in this district. *See United States v. Magluta,* No. 91–6060–CR–MORENO (S.D.Fla.). Benjamin Kramer was facing state murder charges, in connection with the death of Donald Aronow.

(2) the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense; and

(3) the term "specified unlawful activity" has the meaning given that term in section 1956 of this title.

18 U.S.C. § 1957 (emphasis supplied). "Specified unlawful activity" covered by § 1957 includes financial transactions involving drug proceeds. *See* 18 U.S.C. § 1956(7)(B)(i).

Defendant's motion to dismiss centers on the statutory exception for payments necessary to preserve an individual's Sixth Amendment right to counsel, the clause underlined above. Defendant's argument is twofold. Primarily, Defendant argues that because he received the funds from Magluta to pay for Kramer's criminal defense, he cannot be prosecuted under § 1957, due to the statutory exception. Defendant also argues that his prosecution under § 1957 is barred by the Due Process Clause of the Fifth Amendment because: (1) § 1957 is unconstitutionally vague; and/or (2) the rule of lenity requires that § 1957 not be construed to apply to Defendant's actions. The United States counters that the Supreme Court's decisions holding that the Sixth Amendment right to counsel provides no defense to federal forfeiture actions has severely limited, if not completely eviscerated, the exception contained in § 1957(f). The United States reasons that, since the Sixth Amendment does not preclude the forfeiture of assets transferred by a criminal defendant to his attorney, § 1957(f)'s exception cannot sanitize otherwise culpable transactions on the basis that they constitute payment for criminal defense work. As more fully ex-

plained below, the Court disagrees with both Defendant's and the United States' extreme positions.

## II. STANDARD OF REVIEW

In their written submissions and oral arguments, counsel for the respective parties placed great emphasis on the underlying facts of this case (i.e., the facts that the parties believe will be adduced at trial). In light of this procedural posture, the Court finds it necessary to delineate briefly the limited reach of a pretrial motion to dismiss a criminal indictment.

 In criminal proceedings, there is no summary judgment mechanism. *See United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992) (per curiam). "Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *Id.* This, of course, is because the resolution of factual questions is the sole province of the jury. *See United States v. Antonucci,* 663 F.Supp. 243, 245 (N.D.Ill.1987) ("At the motion to dismiss stage, however, [the court] cannot decide as a matter of law something which turns on the specific facts of th[e] case."). "Moreover, this court is constitutionally barred from ruling on a hypothetical question." *Critzer,* 951 F.2d at 307. A motion to dismiss an indictment targeted at the substance of the offense may therefore only be granted if there is a legal infirmity in the indictment. *See United States v. Belcher,* 927 F.2d 1182, 1185 (11th Cir.1991) (citing *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987)). Thus, if the factual allegations of the indictment are sufficient to state the offense charged, the indictment is not deficient and a motion to dismiss aimed at the substance of the charge must be denied.[4]

---

4. This Court, sitting en banc, has to a limited extent pierced the pleadings in a criminal case at the motion to dismiss stage, when the parties stipulated to a set of facts for purposes

of the motion to dismiss. *See United States v. Anaya,* 509 F.Supp. 289 (S.D.Fla.1980) (en banc) (holding that the numerous participants in the "Cuban Refugee Freedom Flotilla,"

Issues which are properly raised, and decided, by a pretrial motion to dismiss are those that are "capable of determination without the trial of the general issue." Fed. R. Crim. P. 12(b). Included amongst these issues are jurisdictional claims that "the applicable statute is unconstitutional or that the indictment fails to state an offense." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir.1989). "As the language of the rule indicates, when the issue raised involves a question that may not be determined without 'trial of the general issue' it is not proper for decision by pretrial motion. The 'general issue' has been defined as evidence relevant to the question of guilt or innocence." *United States v. Ayarza–Garcia*, 819 F.2d 1043, 1048 (11th Cir.1987); *see also United States v. Alfonso*, 143 F.3d 772, 777 (2nd Cir.1998). If a claim or defense, even a constitutional one, implicates the "general issue," the proper procedure is to defer ruling until after the prosecution has presented its case. *See Ayarza–Garcia*, 819 F.2d at 1048. After the prosecution's case-in-chief has been presented, a legal issue that is intertwined with the underlying facts of the case may be properly addressed through a motion for judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or submitted to the jury. *See id.* at 1048–49; Fed. R. Crim P. 12(e).

In sum, the Court's review at this stage of the proceeding is very limited. The Court may dismiss the case based upon: (1) a legal infirmity or defect in the charging instrument; or (2) a purely legal question, such as a determination that the statute is unconstitutional. Any issues that require consideration of the facts underlying this prosecution, however, are not the proper subject of a pretrial motion to dismiss.

## III. DISCUSSION

### A. Defendant's Due Process Challenge to § 1957

Defendant argues that his prosecution violates the Due Process Clause of the Fifth Amendment because § 1957 is unconstitutionally vague and the rule of lenity requires that it not be applied to the instant case. The Supreme Court has characterized both vagueness attacks on criminal statutes and violations of the rule of lenity as raising the issue of fair warning that conduct is prohibited by law. *See United States v. Lanier*, 520 U.S. 259, 265–67, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267, 117 S.Ct. 1219; *see also Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("[The] void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). The rule of lenity, which requires that any ambiguity be resolved in favor of the accused, only comes into play when the criminal statute is ambiguous on its face and the traditional cannons of construction cannot resolve the ambiguity. *See United States v. Velastegui*, 199 F.3d 590, 593 (2nd Cir.1999).

commonly known as the "Mariel Boatlift," could not be prosecuted for illegally bringing aliens into the United States under 8 U.S.C. § 1324(a)), *aff'd*, 685 F.2d 1272 (11th Cir. 1982). This case does not present that type of extraordinary circumstance, nor have the parties unconditionally agreed to a set of facts.

### 1. The Rule of Lenity

■ "Section 1957 was enacted as a tool in the war against drugs. It is a powerful tool because it makes any dealing with a bank potentially a trap for the drug dealer or any other defendant who has a hoard of criminal cash from the specified crimes." *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir.1997) (citations omitted). While § 1957 is broadly worded, its criminal prohibition of monetary transactions involving illicit assets is not ambiguous. *See United States v. Gabriele*, 63 F.3d 61, 65 (1st Cir.1995) (rejecting attempts by the defendant to read additional elements into the plain unambiguous text of the statute). Nor is § 1957(f)'s Sixth Amendment exception so ambiguous that it must be read to preclude all prosecutions of criminal defense attorneys. *See United States v. Hoogenboom*, 209 F.3d 665, 669 (7th Cir. 2000). Thus, the rule of lenity is not implicated in this case.

### 2. Vagueness

With regard to vagueness, the Eleventh Circuit has considered, and rejected, a challenge to § 1957. *See United States v. Baker*, 19 F.3d 605 (11th Cir.1994). In doing so, the court first observed that the statute could not be challenged as being facially unconstitutional due to vagueness. *See id.* at 614 & n. 39. The Eleventh Circuit went on to concluded that the prosecution had proved, at trial, that the defendants deposited money derived from their own criminal activities into bank accounts, which constituted conduct " 'clearly proscribed' by § 1957." *Id.* at 614. Therefore, the Eleventh Circuit rejected the defendants' "as applied" vagueness challenge. "When . . . a statute or regulation does not implicate the First Amendment rights of a defendant, its vagueness is determined on an 'as applied' basis." *United States v. Pitt–Des Moines, Inc.*, 168 F.3d 976, 986 (7th Cir.1999). This is because one "who engages in some conduct clearly proscribed cannot complain of the vagueness of the law as applied to others." *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

The Eleventh Circuit's treatment of the vagueness challenge in *United States v. Baker* suggests that Defendant's argument in his motion to dismiss is premature. The Eleventh Circuit looked to the particular evidence adduced at trial in assessing whether or not § 1957 was constitutionally void due to vagueness as applied. Thus, Defendant's vagueness challenge should properly be raised through a Rule 29 motion for judgment of acquittal, when the Court can assess whether a reasonable person would have understood that the conduct adduced to prove the offenses was prohibited by § 1957.[5]

■ In any event, taking into account the present procedural posture, the Court must apply the vagueness doctrine strictly to the allegations contained in the superseding indictment. In this regard, it cannot seriously be contended that § 1957 is unconstitutionally vague as applied to Defendant. The superseding indictment does not aver that the money was transferred to Defendant as payment for his legal services. Rather, the superseding

---

**5.** The court notes that, if limited to the factual scenario advanced by the parties in connection with the instant motion, Defendant would have a difficult time making a meritorious Rule 29 vagueness argument. The source of the funds, Salvador Magluta, was an indicted drug dealer whose assets were subject to a restraining order at the time of the alleged transactions. *See Magluta v. United States*, 952 F.Supp. 798, 800 (S.D.Fla.1996) (chronicling Magluta's prolific criminal history). Section 1957's plain language gives ample warning that transactions involving drug money are prohibited.

indictment merely charges that Defendant knowingly accepted and deposited, on four separate occasions, drug proceeds in excess of $10,000.00 and that he conspired to do so. In light of the breadth of § 1957 and the averments contained in the superseding indictment, it cannot be said that Defendant would not have had fair warning that his alleged conduct was prohibited by § 1957.

Based upon the foregoing, Defendant's motion to dismiss the superseding indictment as violative of due process is denied.

### B. Defendant's Statutory Exception Challenge

#### 1. Scope of the Exception

The primary contention of Defendant's motion to dismiss is that his prosecution is barred by § 1957(f)'s Sixth Amendment exception. The exception excludes from the definition of prohibited monetary transactions those transactions "necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." 18 U.S.C. § 1957(f)(1). Defendant essentially argues that he comes within the exception because Magluta transferred the cash to him for the purposes of paying Kramer's legal fees. On the other hand, the United States urges that the exception has been rendered meaningless by Supreme Court

precedent and is not even implicated in the present case. As stated at the outset of this opinion, the proper interpretation of § 1957(f)'s exception lies somewhere in the middle of the polar extremes advanced by Defendant and the United States. More fundamentally, though, the effect of § 1957(f)'s exception on this case is not an issue that may be properly decided at the pretrial motion to dismiss stage.

■ At oral argument, Defendant's counsel articulated his broad interpretation of § 1957(f)'s Sixth Amendment exception as one that "does not permit prosecution of a criminal defense attorney for receipt of fees for legal representation."[6] As the Seventh Circuit recently explained, such an expansive reading of the exception is untenable:

> [The defendant] argues that since she later spent the money on lawyers the transactions should be covered by the statute's Sixth Amendment exception.
>
> This is preposterous. Under [the defendant's] conception of the statute, every defendant charged with money laundering under 18 U.S.C. § 1957 could, *at any time*, beat the charge by funneling the proceeds which constituted the initial, illegal transaction toward their defense. Since this interpretation would render the statute useless in the face of

---

**6.** Defendant's statutory interpretation is also evident in his moving papers. As authority to support this position, Defendant, in his moving papers, relies almost exclusively upon excerpts from the Congressional debates on § 1957. In construing a statute, however, the Court is limited to what the two houses of Congress enacted. *See National Wildlife Fed'n v. Marsh*, 747 F.2d 616, 620 n. 6 (11th Cir.1984) ("[w]e are, of course, bound to interpret the statute as enacted, not as it might have been"). Deducing legislative intent, always a hazardous task, should be resorted to only when the text of the statute is ambiguous or would lead to a patently absurd result, and after the other cannons of construction have

been exhausted. *See United States v. Smith*, 957 F.2d 835, 836 (11th Cir.) ("in this circuit, the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results, in which case a court may consult the legislative history and discern the true intent of Congress.") (quotation marks and citations omitted), *aff'd*, 506 U.S. 814, 113 S.Ct. 53, 121 L.Ed.2d 23 (1992). And even when an inquiry into the legislative intent is necessary, the comments of a particular Senator or Congressman, as opposed to Congressional findings of fact, are of little relevance. In this case, the statutory language is not so ambiguous as to require an inquiry into the legislative intent.

the money launderer armed with a minimally competent attorney, we reject it. Congress would not bother passing such an easily circumvented law. Instead, the exception appears to have been inserted to prevent the broad reach of the statute from criminalizing a defendant's bona fide payment to her attorney.

*Correctly read, the statute offers a defense where a defendant engages in a transaction underlying a money laundering charge with the present intent of exercising Sixth Amendment rights.*

*United States v. Hoogenboom*, 209 F.3d at 669 (citations omitted) (emphasis supplied). Section 1957(f)'s Sixth Amendment exception is not an absolute prohibition against *all* prosecutions involving transactions in tainted funds to pay for criminal defendants' legal fees, as Defendant contends. Rather, the exception, as the Seventh Circuit explained, shields otherwise prohibited transactions that are undertaken for *legitimate* criminal defense services. Thus, Defendant's contention that § 1957(f)'s exception represents an absolute bar to his prosecution is without merit. *See generally United States v. Poindexter*, 859 F.2d 216 (D.C.Cir.1988) (per curiam)(denying the defendants' petition of mandamus and dismissing appeal, where the district court denied a motion to dismiss claiming that a Congressional grant of "use immunity" represented absolute bar to prosecution).[7]

On the other hand, it cannot be deduced that § 1957(f)'s exception effectively has no teeth, as the United States argues. The United States' position relies upon two cases from the Supreme Court, concerning the forfeiture of criminal assets paid by defendants to their criminal defense attorneys. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). The United States' analysis, however, is basically flawed because the federal forfeiture statutes do not include a parallel exception to the one contained in § 1957(f). Thus, the Supreme Court's decisions were limited to whether the Sixth Amendment, in and of itself, prohibited the forfeiture of criminal proceeds paid to attorneys. This point was made clear by Justice White, at the outset of the *Caplin & Drysdale, Chartered* opinion:

We are called on to determine whether the federal drug forfeiture statute includes an exemption for assets that a defendant wishes to use to pay an attorney who conducted his defense in the criminal case where forfeiture was sought. Because we determine *no such exemption exists*, we must decide whether the statute, so interpreted, is consistent with the Fifth and Sixth Amendments. We hold that it is.

491 U.S. at 619, 109 S.Ct. 2667 (emphasis supplied); *see also Monsanto*, 491 U.S. at 611, 109 S.Ct. 2657 (" § 853 does not exempt assets to be used for attorney's fees from its forfeiture provisions"). The Supreme Court's determination that assets paid to criminal defense attorneys can be subject to forfeiture was necessitated by its construction of the federal forfeiture statutes. Absent a statutory exception, the Supreme Court reasoned the Sixth Amendment could not protect assets from forfeiture because they were never right-

---

**7.** A reasonable reading of the statute and the Seventh Circuit's opinion would limit the scope of the exception to transactions between a criminal defendant and his or her attorney, thereby excluding the present third-party payment scenario. As more fully discussed in the text, due to the factual nature of this inquiry, the Court has determined that it would be more appropriate to address the issue in the context of a motion for judgment of acquittal.

fully the defendant's to transfer to his attorney in the first instance. *See Caplin & Drysdale, Chartered*, 491 U.S. at 626, 109 S.Ct. 2667 ("[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney").[8] Drug proceeds, like the loot from a bank robbery, are not excluded from the reach of the federal forfeiture statutes simply because they are used to pay for a criminal defendant's legal fees. Congress could have statutorily excluded such transactions from the federal forfeiture statutes, but chose not to. Notably, the dissenting justices, who disagreed with the majority's construction of the federal forfeiture statutes, urged Congress to amend the federal forfeiture statutes explicitly to exempt assets paid for the services of criminal defense attorneys, in order to protect vigilantly a defendant's Sixth Amendment rights. *See id.* at 656, 109 S.Ct. 2667 (Blackmun, J., dissenting).

Upon review, the Supreme Court's decisions concerning the Sixth Amendment's effect on the federal forfeiture statutes do not appear directly to affect § 1957(f)'s exception. Congress has explicitly exempted from the money laundering statute transactions "necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution," 18 U.S.C. § 1957(f)(1), and left to the courts the task of ascertaining the contours and limitations of the exception. The Seventh Circuit has already delineated one such limitation (i.e., the transaction must be made with the present intent to exercise Sixth Amendment rights), and

others will follow. If § 1957 were construed in the manner that the United States urges, the exception for transactions necessary to protect an individual's Sixth Amendment rights would amount to no exception, at all. The United States' position proves too much, as the cannons of statutory construction dictate that the Court not read the exception out of the statute. *See Association of American Physicians v. Bowen*, 909 F.2d 161, 166 (6th Cir.1990) (refusing to construe a portion of the Medicare statute in a way that would render it a legal nullity). As the Seventh Circuit observed, § 1957(f)'s exception should be read to decriminalize transactions that are legitimately entered into for the legal services of a criminal defense attorney. *See Hoogenboom*, 209 F.3d at 669. Such an exception is needed to prevent the breadth of § 1957 from impinging upon the intimacy of the attorney/client relationship. Moreover, requiring the forfeiture of assets received by a criminal defense attorney for his services is far less draconian than making the attorney a criminal for receiving such assets for his services. Indeed, the assets underlying such transactions are still subject to forfeiture, since the federal forfeiture statutes have not been amended to include a similar exception.

### 2. Procedural Considerations

Having determined that the § 1957 exception is neither an absolute bar to Defendant's prosecution, nor a nullity, the Court addresses one final issue. The parties have not considered the question of whether § 1957(f)'s exception is (1) an element of the money laundering offense,

---

8. The concept of "another person's money" is derived from the relation back doctrine in forfeiture cases, whereby the Government's title in property subject to forfeiture vests when a judgment of forfeiture is entered but the Government's "title in the property relates back to the moment when the property became forfeitable." *United States v. 92 Buena*

*Vista Ave., Rumson, N.J.*, 507 U.S. 111, 127, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). "Until the Government does win such a judgment, however, someone else owns the property. That person may therefore invoke any defense available to the owner of the property before the forfeiture is decreed." *Id.*

which the Government has the burden of negating, or (2) an affirmative defense, which Defendant has the burden of proving. This distinction is of importance at the motion to dismiss stage, because if the exception is considered an element of the offense, the Government would be required to aver in the indictment that the transactions were not necessary to protect a person's Sixth Amendment rights. *See United States v. Steele*, 147 F.3d 1316, 1317 (11th Cir.1998) (en banc) (discussing the need to aver directly to each element of an offense). In that event, the failure to aver in the indictment that the transactions were necessary to protect a person's Sixth Amendment rights would constitute a "legal infirmity." Here, the superseding indictment contains no such averments.

■ However, the Court concludes that § 1957(f)'s Sixth Amendment exception is an affirmative defense, the merits of which must be assessed based upon the evidence adduced at trial. From the face of § 1957, it is not obvious whether Congress intended § 1957(f)'s exception to be an element of the offense or an affirmative defense. On the one hand, reading § 1957(f) naturally, the exception appears to be part of the statutory definition of prohibited "monetary transactions," which would support the exception being an element of the money laundering crime. *See United States v. Kloess*, 97 F.Supp.2d 1084, 2000 WL 669153, at *3 (M.D.Ala. 2000). On the other hand, weighing heavily in favor of construing the exception as an affirmative defense is the process by which the exception was adopted. The exception was added to the statute two years after its enactment, in order to prevent criminalizing the legitimate dealings of defense attorneys with drug dealing clients. *See Rutgard*, 116 F.3d at 1291. "Without the amendment a drug dealer's check to his lawyer might have constituted a new federal felony." *Id.* Through the exception Congress created a safe harbor

for legitimate criminal defense expenses; it did not alter the substantive elements of money laundering under § 1957. *See Hoogenboom*, 209 F.3d at 669. Moreover, construing the exception as an element of the offense would allow the exception (i.e., knowingly accepting criminal proceeds for bona fide criminal defense work does not violate § 1957) to swallow the rule (i.e., knowingly accepting criminal proceeds violates § 1957). This could not have been Congress's intent. Thus, the appropriate construction of § 1957(f)'s exception is that it is an affirmative defense to the money laundering offense, which Defendant must prove, at trial, by a preponderance of the evidence. *See United States v. Deleveaux*, 205 F.3d 1292, 1298–99 (11th Cir.2000); *United States v. Petty*, 132 F.3d 373, 378 (7th Cir.1997).

With the exception correctly viewed as an affirmative defense, it is clear that Defendant's motion to dismiss is premature. As discussed above, there is no summary judgment procedure in criminal cases. Defendant's argument is that he is innocent in light of § 1957(f)'s exception; however, "guilt or innocence is a decision which may properly be reached only after a trial on the merits and not before." *United States v. Mann*, 517 F.2d 259, 271 (5th Cir.1975). To bring § 1957(f)'s affirmative defense before the jury, Defendant must come forward with credible evidence at trial that the subject transactions were "necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." 18 U.S.C. § 1957(f)(1). If he does so, he will be entitled to a jury instruction on the affirmative defense created by § 1957(f). If he fails to come forward with such evidence, the case will be given to the jury as a straight § 1957 money laundering case.

Having addressed both the substantive and procedural aspects of Defendant's motion to dismiss the superseding indictment

▄▄▄▄▄▄▄▄▄

based upon § 1957(f)'s Sixth Amendment exception, the Court denies Defendant's motion.[9]

## IV. CONCLUSION

The respective positions taken by Defendant and the United States both overstate the applicability of § 1957(f)'s Sixth Amendment exception. The exception does not provide an absolute bar to prosecution of criminal defense attorneys, as Defendant contends. Nor does it provide no defense at all, as the United States argues. Rather, properly read § 1957(f)'s Sixth Amendment exception provides an affirmative defense to conviction under § 1957 for transactions that fall within the parameters of the exception. Thus, the superseding indictment is not subject to dismissal by operation of the exception. Moreover, it is impossible to assess, at this stage, whether or not Defendant had fair warning that his conduct was prohibited by § 1957 or whether he comes within the statutory exception, since Defendant's conduct must be established by the evidence adduced at trial. Defendant's motion to dismiss is therefore DENIED without prejudice to Defendant's renewal of his arguments at trial in the form of a Rule 29 motion for judgment of acquittal.

## ORDER

THIS CAUSE is before the Court upon Defendant's motion for reconsideration of the Court's July 7, 2000 order, which denied Defendant's motion to dismiss the superseding indictment and construed 18 U.S.C. § 1957(f)'s Sixth Amendment exception to be an affirmative defense. "Courts have recognized three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Groover v. Michelin N. America, Inc.*, 90 F.Supp.2d 1236, 1256 (M.D.Ala. 2000). None of these grounds is present in the instant case. Accordingly, Defendant's motion for reconsideration is DENIED.

**9.** As with Defendant's vagueness challenge, the underlying facts, as represented by the parties in connection with the instant motion, do not appear to fit within the affirmative defense. Section 1957(f)'s exception squarely applies when legitimate legal fees are paid from a tainted source by a criminal defendant directly to his attorney. *See Hoogenboom,* 209 F.3d at 669. In this case, however, the subject transactions were not necessary to protect the Sixth Amendment rights of the transferor (i.e., Salvador Magluta). *See supra* Notes 3 & 5. A third-party, of course, may pay a criminal defendant's legal fees, and if the attorney has no knowledge that the monies paid by a third-party are derived from a tainted source, he has not violated § 1957. *See* 18 U.S.C. § 1957(a) (requiring knowledge that the subject of the transaction is criminally derived property). Thus, there appears to be no need for a statutory exception for payments by a third-party, because the attorney need not explore the background of the third-party as he must do with his client. Simply put, there is no attorney/client relationship that would be preserved by extending § 1957(f)'s Sixth Amendment exception to payments by a third-party.